Pee Cueiam,
 

 Appellant has appealed from a sentence of the Court of Quarter Sessions of Erie County, imposed April 21, 1941, following a finding of “guilty” by the trial judge, Evans, J., under an indictment charging that he unlawfully, maliciously and wantonly broke down certain posts, railings and fences erected for the enclosure of land of the Orchard Beach Park Association Subdivision located in the township of North East, Erie County, and fronting upon the southern shore of Lake Erie.
 

 The indictment was drawn under Section 940 of the Penal Code of June 24, 1939, P. L. 872, 18 PS §4940, which makes such an offense a misdemeanor punishable by a fine not exceeding $50, or imprisonment not exceeding six months, or both. Appellant was sentenced to pay a fine of $30 and the costs of prosecution, or undergo an imprisonment in the jail of Erie County for thirty days.
 

 When the case was called for trial, appellant, pursuant to the provisions of Section 1 of the Act of June 11, 1935, P. L. 319, 19 PS §786, signed a waiver of trial by jury. See
 
 Com. v. Kramer,
 
 146 Pa. Superior Ct. 91, 22 A. 2d 46.
 

 The Commonwealth introduced evidence to the effect that about 1918 it was deemed desirable to have a north and south private driveway along the western side of the property of the association from a point in an east and west public road, Route 5, located about 594 feet south of the lake, to the shore thereof. Accordingly, the association contributed 15 feet along the western line of its property, and the adjoining owners to the west contributed 15 feet along the east line of their property, thereby creating the Sunset Drive.
 

 
 *437
 
 As we understand the testimony, appellant became the owner of a lot along the lake front to the west of this private road, but separated from it by an intervening lot. About 1938 the association, being desirous of excluding strangers who had formed a habit of parking on the lake shore in front of the lots of its members, constructed a fence in the middle, and at the northern end, of the driveway, beginning at a post approximately at high water line and extending south a distance of 43 feet to a point 5 feet south of a tree in the centre of the road. A gate was then constructed between substantial posts and across the eastern half of the road. In the language of one of the witnesses, an engineer, it was constructed “of pipe post, about a three inch iron post, with a wooden bar and a diagonal brace and it swings across this road.” The construction of this fence and gate did not cut off appellant’s access to his property, as the western 15 feet of the drive, leading down to the shore of the lake, remained open.
 

 We adopt the following excerpt from the opinion of the trial judge, supporting his conviction of appellant, as an accurate summary of the evidence and correct statement of the principles of law applicable thereto:
 

 “Testimony was taken which showed without contradiction that the defendant committed the acts complained of. The only question involved is as to whether the removal of the property was done in a malicious and wanton manner. Orchard Beach Park Association Subdivision is an association of individuals owning property along the banks of Lake Erie, including a roadway leading from Boute 5 to the lake. Strangers had been in the habit of parking at the beach end of this roadway, had created disturbance in the neighborhood, and were a continual nuisance. To prevent this, officers of the association erected a fence and gateway, and provided keys for the use of various members. Although the defendant was not a member, he was given
 
 *438
 
 a key to the lock on the gate in order that he might not be inconvenienced in his possession of a cottage on [a nearby] lot. It is undisputed that for the last several years this defendant opened the gate when the authorities wanted it closed, and that in the last two years he put locks of his own on the gate to keep it closed when the authorities wanted it open. On August 6, 1940, he took the fence down and rolled it up so that it was no longer of use for the purpose erected. He was asked many times to desist from interfering with what he had no control over, but he persisted in his actions in spite of entreaties or threats from the representatives of the owner association. His defense is that he did it under a claim of right, and that even if mistaken, there was no malice involved.
 

 “The defendant is a very intelligent person, and knew that the courts were open to him for adjudication of the matter through civil action. He did not perform these acts through any thought of convenience for himself, because when the association wanted the gates locked, he opened them. This was all part of a continuous course of action of his, leading up to the removal of the fence and posts as charged in the indictment. Over too long a period of time he saw fit to take the law into his own hands, and not through any necessity but clearly for the purpose of making trouble. Under the circumstances we cannot help but feel that his actions were wanton and malicious.”
 

 Where a defendant in a criminal prosecution agrees to be tried by a judge without a jury, the findings of the judge are as binding upon the appellate court as the verdict of a jury, if supported by competent evidence:
 
 Com. v. Matteo;
 
 130 Pa. Superior Ct. 524, 197 A. 787. From our examination of the record, we are satisfied it contains competent evidence supporting the findings of fact of the trial judge and that his conviction of appel
 
 *439
 
 lant followed from a proper application of the law to those facts.
 

 Judgment affirmed, and it is ordered appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence.