Commonwealth *v.* Blumenstein, Appellant.

84

Argued April 8, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Max Rosenn*, with him *William P. Farrell, James B. Gitlitz*, and *Rosenn, Jenkins & Greenwald*, for appellant.

*Ralph P. Needle*, Assistant District Attorney, with him *Carlon M. O'Malley*, District Attorney, for appellee.

*Blank, Rudenko & Klaus*, submitted a brief, under Rule 46, for American Civil Liberties Union.

OPINION BY WRIGHT, J., June 22, 1957:

Martin Blumenstein was indicted by the grand jury in Lackawanna County on a charge of violating Section 528 of The Penal Code,[1] which reads as follows: "Whoever gives or participates in, or being the owner of any premises, or having control thereof, permits within or on said premises, any dramatic, theatrical, operatic, or vaudeville exhibition, or the exhibition of fixed or moving pictures, of a lascivious, sacrilegious,

---

[1] Act of June 24, 1939, P. L. 872, Section 528, 18 P.S. 4528.

obscene, indecent, or immoral nature and character, or such as might tend to corrupt morals, is guilty of a misdemeanor . . ." After a trial before Judge EAGEN without a jury, Blumenstein was adjudged guilty and sentence was imposed. This appeal followed.

The record discloses that Blumenstein was the manager of the Ideal Drive-In Theatre in Greenfield Township, Lackawanna County. On October 12, 1956, pursuant to instructions from the district attorney, three state policemen attended the theatre. After viewing the showing of a film entitled "Uncover Girls", they closed the theatre, confiscated the film, and arrested Blumenstein. The uncut version actually exhibited had previously been refused approval by the Pennsylvania State Board of Censors.[2] Two reels of the confiscated film were exhibited in court. The trial judge found that they "depicted a series of dancing acts, which were definitely cheap, lewd, obscene and indecent".

Appellant's principal contention is that Section 528 of The Penal Code is unconstitutional. In support of this contention a brief was also filed by the American Civil Liberties Union under our Rule 46. Before considering this proposition, we will dispose of appellant's subordinate contention, which is: "The motion picture does not constitute an exhibition in violation of Section 528 of The Penal Code of 1939".

Appellant argues that "there is nothing in this film that justifies the lower court's conclusions that the

---

[2] Prior to the decision in *Hallmark Productions v. Carroll*, 384 Pa. 348, 121 A. 2d 584. While a revised version of the film was eventually approved, the certificate of censorship, dated December 17, 1954, has thereon endorsed the following notation: "In order to change rejection, producer and representative made drastic eliminations to a final *revised* version. These eliminations included strip dances in extreme nudity and obscenities and indecencies in dialogue. It is a violation of the Pennsylvania Censor Act to reinstate any of the eliminated material for exhibition in Pennsylvania".

dancing acts would corrupt morals". Where a defendant in a criminal prosecution agrees to be tried by a judge without a jury, the findings of the trial judge which are supported by the evidence, are as binding upon the appellate court as the verdict of a jury: *Commonwealth v. Lick*, 146 Pa. Superior Ct. 435, 22 A. 2d 616. The only case cited by appellant in support of his position is *Commonwealth v. Gordon*, 66 D. & C. 101, affirmed as *Commonwealth v. Feigenbaum*, 166 Pa. Superior Ct. 120, 70 A. 2d 389, which involved literature allegedly obscene. In that case we expressly stated that we were "bound by the factual inferences made by the trial judge, all of which were drawn in favor of the defendants". In the case at bar the factual inferences were drawn by the trial judge in favor of the Commonwealth. Having viewed the films, we have concluded that his findings are supported by the evidence.

Coming now to appellant's principal contention, it is first argued: "A. The statute is so vague and indefinite that it denies the defendant procedural due process". Briefly, stated, appellant's position is that the act contains no definition of the conduct proscribed, no ascertainable standard of guilt. Reliance is placed upon *Winters v. New York*, 333 U. S. 507, 68 S. Ct. 665; *Lanzetta v. New Jersey*, 306 U. S. 451, 59 S. Ct. 618; *Connolly v. General Construction Co.*, 269 U. S. 385, 46 S. Ct. 126, and *United States v. Cardiff*, 344 U. S. 174, 73 S. Ct. 189. We do not consider those cases controlling in the present situation. The words used in the statute here under consideration have well-settled connotations which can be applied by the exercise of ordinary common sense and reason. See *Commonwealth v. New*, 142 Pa. Superior Ct. 358, 16 A. 2d 437; *Commonwealth v. Paul*, 177 Pa. Superior Ct. 289, 111 A. 2d 374. Obscenity and indecency have always been con-

sidered offenses against the public, whether covered by statute or not. See *Commonwealth v. Sharpless*, 2 S. & R. 91; *Commonwealth v. DeGrange*, 97 Pa. Superior Ct. 181. "Obscene" means calculated to deprave morals or lead to impure purposes, a lowering of that standard which we regard as essential to civilization: *Dunlop v. United States*, 165 U. S. 486, 17 S. Ct. 375. "Indecent" means violative of common propriety, grossly vulgar, offensive to modesty: *United States v. Davidson*, 244 F. 523. "Lascivious" and "lewd" are synonymous terms and mean calculated to excite lustful and sensual desires in those whose minds are open to such influences: *United States v. Clarke*, 38 F. 732. In the well-chosen language of Judge ERVIN in *Commonwealth v. Randall*, 183 Pa. Superior Ct. 603, 133 A. 2d 276: "Our Federal and State Constitutions assume that the moral code which is part of God's order in this world, exists as the substance of society. The people of this State have acted through their legislature on that assumption. We have not so cast ourselves adrift from that code nor are we so far gone in cynicism that the word 'immoral' has no meaning for us. Our duty, as a court, is to uphold and enforce the laws, not seek reasons for destroying them".

Appellant argues secondly: "B. The language of the statute is so broad that its sanctions apply to conduct within the protection of the First and Fourteenth Amendments to the Federal Constitution and the First Article of the Pennsylvania Constitution". His position is that these constitutional provisions guarantee "liberty of expression by means of motion pictures". Our answer is that there must be some restriction upon the type of motion picture films which may be lawfully exhibited.[3] The police power is the greatest and most

---

[3] See an article entitled "The Attack on Decency" in the June 1957, issue of the American Legion Magazine.

powerful attribute of government, and if its exercise conflicts with a constitutional right, the police power must prevail: *Commonwealth v. Widovich*, 295 Pa. 311, 145 A. 295.

Appellant relies upon a number of cases dealing with precensorship of motion pictures, particularly *Burstyn v. Wilson*, 343 U. S. 495, 72 S. Ct. 777. In that case the Supreme Court said: "Since the term 'sacrilegious' is the sole standard under attack here, it is not necessary for us to decide, for example, whether a state may censor motion pictures under a clearly drawn statute designed and applied to prevent the showing of obscene films. That is a very different question from the one now before us". Appellant also relies upon *Hallmark Productions v. Carroll*, 384 Pa. 348, 121 A. 2d 584, wherein the motion picture censorship act, which provided for disapproval of such films "as are sacrilegious, obscene, indecent, or immoral", was held to be unconstitutional. However, the opinion of Mr. Chief Justice STERN in that case concludes with the following significant language (italics supplied): "It need hardly be added that even if all pre-censorship of motion picture films were to be held invalid this would not in and of itself affect the right to suppress objectionable films if exhibited, *or to punish their exhibitor*". Similarly, in *Chaplinsky v. New Hampshire*, 315 U. S. 586, 62 S. Ct. 766, Mr. Justice MURPHY said: "Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words . . .".

Appellant submits that it is of no consequence that decisions concerning censorship statutes have to do with prior restraints rather than criminal sanctions, citing *Butler v. Michigan,* 352 U. S. 380, 77 S. Ct. 524, In that case the statute under attack made it a misdemeanor, inter alia, to distribute any publication containing obscene, immoral, lewd, or lascivious language tending to corrupt the morals of youth. The Supreme Court held that the statute was "not reasonably restricted to the evil with which it is said to deal. The incidence of this enactment is to reduce the adult population of Michigan to reading only what is fit for children". But the section of our Penal Code here under consideration is not designed (paraphrasing the words of Mr. Justice FRANKFURTER) to guarantee the general public against films not too rugged for grown men and women in order to shield juvenile innocence. Our statute is intended to prohibit obscene films generally. In view of the finding, supported by the evidence, that the film exhibited by appellant was lewd, obscene, and indecent, the constitutional argument has no merit: *Commonwealth v. Donaducy,* 167 Pa. Superior Ct. 611, 76 A. 2d 440.

Judgment affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.