Commonwealth *v.* Widovich et al.

314

Argued October 2, 1928. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Henry H. Wilson,* for appellants.—Sections 2, 7, 9, 10, 13 and 26, of article I of the state Constitution, and the 14th Amendment of the federal Constitution are violated by the Sedition Act: Spayd v. Ringing Rock Lodge, 270 Pa. 67; De Chastellux v. Fairchild, 15 Pa. 18; Wells v. Bain, 75 Pa. 39; Schaefer v. United States, 251 U. S. 466; Whitney v. California, 274 U. S. 357; Gitlow v. New York, 268 U. S. 652.

*W. D. Craig,* with him *J. Blaine McGoun,* District Attorney, for appellee.—The Sedition Acts are constitutional: Fox v. Washington, 236 U. S. 273; Schenck v. U. S., 249 U. S. 47; Debs v. U. S., 249 U. S. 211; Gilbert v. Minnesota, 254 U. S. 325; Com. ex rel. Turner v. Williams, 194 U. S. 279; Toledo Newspaper Co. v. U. S., 247 U. S. 402.

OPINION BY MR. JUSTICE KEPHART, January 7, 1929:

Four defendants were convicted of violations of the Sedition Act of June 26, 1919, P. L. 639, as amended by the Act of May 10, 1921, P. L. 435. The act defines sedition as follows: "The word 'sedition,' as used in this act, shall mean: Any writing, publication, printing, cut, cartoon, utterance, or conduct, either individually or in connection or combination with any other person or persons, the intent of which is: (a) To make or cause to be made any outbreak or demonstration of violence against this State or against the United States. (b) To encourage any person or persons to take any measures or engage in any conduct with a view of overthrowing or destroying or attempting to overthrow or destroy, by any force or show or threat of force, the Government of this State or of the United States. (c) To incite or encourage any person or persons to commit any overt act with a view to bringing the Government of this State or of the United States into hatred or contempt. (d) To incite any person or persons to do or attempt to do personal injury or harm to any officer of this State or of the United States, or to damage or destroy any public property or the property of any public official because of his official position. It shall also include: (e) The actual damage to, or destruction of, any public property, or the property of any public official, perpetrated because the owner or occupant is in official position. (f) Any writing, publication, printing, cut, cartoon, or utterance which advocates or teaches the duty, necessity, or propriety of engaging in crime, violence, or any form of terrorism, as a means of accomplishing political reform or change in government. (g) The sale, gift, or distribution of any prints, publications, books, papers, documents, or written matter in any form, which advocates, furthers, or teaches sedition as hereinbefore defined. (h) Organizing or helping to organize or becoming a member of an assembly, society, or group, where any of the policies or purposes thereof are seditious as

hereinbefore defined." Our immediate discussion will deal with all the foregoing paragraphs, with the exception of paragraph (c); no charge was laid thereunder, and it will not be considered.

The indictment charged that defendants "urged upon each other and upon other persons to acquire arms, ammunition and dynamite, to band themselves together to organize and drill, and to overthrow and destroy the government of this Commonwealth and of the United States by force, arms and bloodshed"; that defendants organized and became members of an association that had for its purpose the overthrow of the government by force of arms, and the creation in this country of a Soviet republic; that defendants sold books and pamphlets that advocated and taught the overthrow of the government by force.

On appeal to the Superior Court, one of the defendants was discharged because of insufficient evidence, and the conviction of the others sustained on at least one count of the indictment, the sentence of all convicted not exceeding the maximum for that count. In the petition for allowance of an appeal, they did not claim the evidence was insufficient to sustain a conviction, and, we understand, no such question was raised in the Superior Court. The questions presented there, and in the application for an appeal to this court, pertained to trial errors, abuse of discretion and the constitutional question. Accordingly, we allowed an appeal on the constitutional question only.

We may, in passing, note that in appellants' history of the case it is admitted that defendants were members of the Workers (Communist) Party of America, and may be considered as having been members up until the 11th of November, 1926, the date of arrest. The party is affiliated with the "Third International" of Moscow, which is a world-wide revolutionary organization, and it is admitted that a literal interpretation of Communism, as taught by Marx, Lenin, and their school, includes a

proletarian revolution and the dictatorship of the proletariat, to be consummated by force. The real issue is thus stated: "Is it sedition to belong to an organization that teaches and advocates this extreme doctrine of Communism?" "As to the other [these] defendants there was some evidence that they took part in the various activities of the party; that Muselin, Zima and Resetar [defendants here] taught and spoke at the meetings, advocating the violent overthrow of government"; and that they solicited persons to join the organization which taught the principles of the overthrow of government by force, as found by the Superior Court.

Appellants urge the Sedition Act violates sections 2, 7, 9, 10, 13 and 26 of article I of the Constitution of this State, and article XIV of the amendment of the federal Constitution. The sections of our Constitution chiefly relied on are parts of the second section, which reads: "The people......have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper"; and part of section 7: "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty."

Whatever may have been the understanding of section 2, the Civil War definitely decided that no change in the form of government can come about through secession or the withdrawal of a part of the people from our scheme of government. That effort to separate was met with successful armed resistance. The established government is the government of all the people; any change in its form should come from the majority, and the Constitution points the way to effect such a change. Whether, under extreme circumstances, a condition may arise justifying other procedure of a more violent nature (Wells v. Bain, 75 Pa. 39), we will not decide or discuss; however, section 20 would seem to furnish means to secure satisfactory redress. The legislature, under the

police power, to preserve the State's republican form of government, to suppress insurrection and to maintain the safety, peace and order of its citizens, may enact laws to suppress acts or attempts to commit acts of violence toward the government; it may prohibit the teaching or advocacy of a revolution or force as a means of redressing supposed injuries, or effecting a change in government. See Buffalo Branch, Mutual Film Corp. v. Breitinger, 250 Pa. 225; White's App., 287 Pa. 259, and cases there referred to. It is true that section 7 is a part of the Bill of Rights, but overshadowing these rights is the authority of the government to preserve its existence under the police power. Article XVI of the Constitution says "the police power shall never be abridged." This relates to all phases of its exercise. The police power is the greatest and most powerful attribute of government; on it the very existence of the state depends: 6 R. C. L. 183; District of Columbia v. Brooke, 214 U. S. 138; Bank v. Haskell, 219 U. S. 104; Eubank v. Richmond, 226 U. S. 137. If the exercise of the police power should be in irreconcilable opposition to a constitutional provision or right, the police power would prevail: Jacobson v. Massachusetts, 197 U. S. 11, 25, 26; Buffalo Branch, Mutual Film Corp. v. Breitinger, supra, 234; Leiper v. Baltimore & P. R. R. Co., 262 Pa. 328; Scranton v. Pub. Ser. Com., 268 Pa. 192; Springfield Water Co. v. Phila., 285 Pa. 172.

Appellants, by invoking section 7 of our Constitution and article XIV of the federal Constitution, raise three questions: (1) May the legislature define the constitutional limitations on the freedom of speech and the liberty of the press in matters touching the government, or is that solely for the judiciary? (2) What, if any, are the constitutional limitations? (3) Does the Sedition Act offend against the right of free speech?

It may be well at the outset to understand just what the legislature intended. The act makes sedition a felony, and names situations that warrant a conviction of

it.  The burden of the act is an effort to preserve the State, and it should be so interpreted.  The act protects the life of the State from direct assault by force or intimidation, or from an indirect assault through the machinations, of an individual or a group which teach, advocate or encourage others to attack with force with intent to destroy, or to terrorize its officials through fear of harm, injury or destruction, with like purpose.  This is accomplished by punishing those individuals who would by force overthrow it.  Intent to destroy or overthrow the government is made an essential element of the crime; and such intent or purpose is shown by the normal result of committed acts, or may be inferred, therefrom—an end that an ordinarily prudent person would naturally expect from the act.  In some of the offenses the legislature had determined the doing of the act involved a danger to the State, as teaching, or sale of writings, etc.  The statute has no relation to acts of persons, criminal or civil, which may be termed offenses or wrongs against persons as persons or property as property, and which cause incidental harm to the structure of the State.  To advise or suggest to one to commit crimes such as trespass or, as suggested, violation of the Volstead Act, or others of higher degree, is not an engagement in crime or violence as a means of accomplishing a change in the form of government; such violations are not within the Sedition Act.  The act does not emasculate political discussions.  Government officers, the conduct of public officials and the laws themselves, may be criticized without fear of punishment, unless the statements should be maliciously false, and then punishment is meted out in the terms of injury to an individual.  Remedies for the relief of supposed wrongs or the redress of grievances may be suggested and urged without fear of punishment, as provided by article I, section 20, of our Constitution.  Books treating historically of past revolutions, of the doctrines of the various forms of government, books and essays on sociology and

economics, which treat on the various influences in government and their possible elimination, or their supposed peril, the writings of reformers,—all these may be safely offered for sale or taught as they are now in our educational institutions. Freedom of thought, speech and the press is as extensive since the passage of the act as it was before. The Sedition Act does not attempt to interfere with these rights; it contemplates a higher and broader ground. The danger line in utterances is reached when one strikes at the very foundation of organized society by inciting rebellion in an attempt to destroy it.

The acts charged in the indictment were of a nature to destroy or injure the government, and were undertaken with that end in view, as well as to seriously disturb the peace, tranquillity, good order, safety and happiness of its citizens, and so come within the purview of the statute.

It is argued that Pennsylvania of all the Commonwealths is the one State which can impose no legislative control or restraint on freedom of speech or press,—the courts alone may do this; that the State, through the courts, protects itself under the common law, and, inasmuch as offenses against the government must be considered in the light of time, place and circumstances (Schenck v. U. S., 249 U. S. 47; Frohwerk v. U. S., 249 U. S. 204; Pierce v. U. S., 252 U. S. 255; State v. Kuhn, 56 Mont. 108, 182 Pac. 107), these qualities are ascertainable by the courts as an ever present overseeing arm of the government, and not by the legislature which fixes hard and fast arbitrary rules; that the whole matter always has been, and should be, with the courts. Respublica v. Joseph Dennie, 4 Yeates 267, is cited in support of this contention.

Section 7 states that every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. The liberty of speech and press guaranteed by our Constitution does not mean an abso-

lute liberty, without limitation; it is limited by its own terms. When one freely speaks or prints, he is responsible, through the processes provided by law, to the people or to the individual aggrieved, if that liberty is abused. The Constitution is not solely concerned with wrong or harm to the person, but is unrestricted in terms, and is sufficiently comprehensive to include the government, to whom one may be responsible for the abuse of the liberty of speech. The body that determines in the first instance what utterances of speech shall constitute abuse, is the legislature. They must be such as cause or tend to cause an uprising to injure or overthrow the government. The legislature also determines finally whether the time, place and circumstances are ripe for such limitation. Having a more frequent and direct contact with the people, the members composing that body are better able to observe and sense political or economic difficulties, to learn what situations present substantive evil, and whether the latter is likely to be inflamed by violent language or the use of the prohibited language. That the legislature, in the interest of public safety, as an exertion of the police power, may enact laws which will correct evils that threaten the government, is illustrated by the Sedition Act. Whether the regulation of speech or print goes beyond the "abuse of liberty" as contemplated by the Constitution, is for the courts. They may review the reasonableness of the enactments; and, viewed in the light of all considerations, the purposes of the Sedition Act do not violate any fundamental precept of our constitutional government.

Appellants contend that the courts should define the speech or print that would constitute an abuse of liberty or freedom as mentioned in the Constitution; for illustration, when one is prosecuted criminally for acts such as contained in the Sedition Act, the courts alone should have power to declare whether these acts are an abuse of liberty of speech or print. 'However great the power lodged in courts, there is no reasonable inference from

section 7 that would confer such exclusive authority on the courts. Considering the character of the offenses enumerated in the act, the theory of our government forbids such extraordinary exclusive control. While the proscription was undoubtedly to protect all branches of government, it particularly safeguarded the legislative and executive branches, rather than the judicial. The judiciary is a constituent or coördinate part of government; it is not subordinate to other powers, nor does it depend for existence on the legislative will. Its powers come directly from the people, without intervening agency. From the very nature of its time-honored powers, it should be kept a separate, distinct and independent entity in government to perform those duties which have been immemorially under the common law imposed on it. The domain of the judiciary is in the field of the administration of justice under the law; it interprets, construes and applies the law. Its powers were possibly the first to be exercised by civilization. Within the compass of its duties it may ascertain and punish crimes against the State, and may, at times, in designated instances, operate as a check on other departments of government; but its strength and security come from a complete and absolute separation from political, administrative or ministerial functions. While in essence it may restrain attempts on the life of the State, and therefore under the common law may protect the State, the judiciary does not assume, nor should it be burdened with, those functions of government which are political, administrative or ministerial, nor does it intermeddle with the execution of these functions by the proper branches of government unless specifically required to do so by the Constitution. The legislative and executive branches should be, as they are, in a position actively to protect their delegated functions by the passage of an act like the one in question. It will be time for the judiciary to act when its own powers are assailed.

The Sedition Act does not offend the right of free speech; it clarifies and makes certain that which was uncertain, and fixes a definite and precise standard for the conduct of individuals. The act prescribes offenses in certain language; nothing is left to the imagination.

The same result is reached under the Fourteenth Amendment to the federal Constitution. "That the freedom of speech which is secured by the Constitution does not confer an absolute right to speak, without responsibility, whatever one may choose, or an unrestricted and unbridled license giving immunity for every possible use of language and preventing the punishment of those who abuse this freedom; and that a state in the exercise of its police power may punish those who abuse this freedom by utterances inimical to the public welfare, tending to incite to crime, disturb the public peace, or endanger the foundations of organized government and threaten its overthrow by unlawful means, is not open to question": Whitney v. California, 274 U. S. 357, 371, 47 Sup. Ct. 641, 646, 647.

The judgment of the Superior Court is affirmed, and the record is remitted so that the sentence of the court below may be complied with.