394 A.2d 444

**In re 42 PA. C. S. § 1703.***

Supreme Court of Pennsylvania.

.Nov. 14, 1978.

---

* Editor's Note: The Supreme Court of the United States has denied a petition for leave to file a petition for a writ of mandamus which was sought to direct respondent to vacate this letter. *Kibert v. The Supreme Court of Pennsylvania,* Feb. 21, 1979, 78–1038, —— U.S. ——, —— S.Ct. ——, —— L.Ed.3d ——.

524

The Honorable Milton J. Shapp
Governor of Pennsylvania
225 Capitol Building
Harrisburg, Pa. 17120

The Honorable Ernest P. Kline
President of the Senate
200 Capitol Building
Harrisburg, Pa. 17120

The Honorable K. Leroy Irvis
Speaker of the House of
 Representatives
139 Capitol Building
Harrisburg, Pa. 17120

Gentlemen:

We respectfully submit this direct letter of address as a means of making our views known to you, the representatives of our two coordinate branches of government.[1] We do so in order to convey to you as quickly and as precisely as possible our reasons for not complying with the provisions of the Public Agency Open Meeting Law (P.L. 486, No. 175) in our promulgation on November 14, 1978, of Amendments to Rules of Civil Procedure 51, 52 and 76. See our order of that date, No. 53, Civil Procedural Rules Docket No. 5, copy attached. The submission of this direct letter of address in no way suggests any departure from firm precedent against rendering of advisory opinions. Neither does this letter signal any weakening in our commitment that the judiciary not unnecessarily intrude in legislative matters. Rather, in

1. While we know of no occasion on which this Court has employed this procedure in the past, it has been used by courts of other states in appropriate circumstances. See, e. g., *In re 1976 Pa. 267,* 400 Mich. 660, 255 N.W.2d 635 (1977).

this special situation in which we, as an institution, are constrained not to follow an expressed mandate of the General Assembly, we feel it incumbent on ourselves as a matter of deepest respect to our coordinate branches to explain that position as promptly as possible. The alternative course would be to await an adversary challenge to our failure to follow the Open Meeting Law. This approach would risk creating and prolonging unnecessary tension between our branches of government. Accordingly, we have chosen this letter of address by which to articulate our decision.

## I

In 1978 the General Assembly explicitly brought the rule-making functions of the Pennsylvania judicial branch within the scope of the Public Agency Open Meeting Law (P.L. 486, No. 175); the General Assembly provided in a statute now codified at 42 Pa.C.S. § 1703, that "[t]he Supreme Court and all other agencies and units of the unified judicial system when exercising the powers to recommend or adopt general rules or other orders in the nature of regulations shall be an agency within the meaning of . . . the Public Agency Open Meeting Law." [2] As a consequence of being a "covered agency" under the Open Meeting Law, the Supreme Court, when exercising its rule-making functions, is mandated by the terms of that law to give public notice of its meetings. 65 P.S. § 265, and to keep "open to the public at all times" all of its "meetings or hearings . . . at which formal action is scheduled or taken." 65 P.S. § 262. As a means of enforcing the public meetings requirement, the Open Meeting Law also provides—in language again made applicable to the judiciary under 42 Pa.C.S. § 1703— that "[n]o formal action shall be valid unless such formal action is taken during a public meeting," 65 P.S. § 262, and declares that "[a]ny member of any agency who participates in a meeting or hearing knowing that it is being held or conducted in such a way to intentionally prevent an interest-

---

**2.** The provision was enacted as Section 10 (19.1) of the Judiciary Act Repealer Act, Act No. 1978–53.

ed party from attending or with the intent and purpose of violating this act is guilty of a summary offense and upon conviction thereof shall be sentenced to pay a fine not exceeding $100 plus costs of prosecution." 65 P.S. § 268.

■ After careful study, it is our conclusion that 42 Pa.C.S. § 1703 is inconsistent with the Pennsylvania Constitution's grant of power to the Supreme Court "to prescribe general rules governing practice, procedure and the conduct of all courts . . .." Pa.Const., art. V, § 10(c).[3] In making the Open Meeting Law applicable to the judiciary when performing its rule-making tasks, the General Assembly has attempted to exert control over one of the relatively few functions that the Pennsylvania Constitution explicitly assigns to the judicial branch of government. While the General Assembly was unquestionably well intentioned in enacting Section 1703, we are unanimously of the view that the provision represents an intrusion by the legislature into the essential functioning of a coordinate branch of government, a violation of the separation of powers doctrine on which responsible and responsive government is so critically dependent.

## II

### A

Prior to 1968, the Pennsylvania Constitution contained no explicit grant of rule-making authority to the Supreme

**3.** Article V, § 10(c) provides in full as follows:

"The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions."

Court. While judicial rule-making power may well have been inherent in the constitutional scheme,[4] the explicit grant of rule-making authority to the judiciary came from the General Assembly. See 17 P.S. § 61.[5] Under this statutory grant the rule-making power of the Supreme Court within covered areas was absolute. As distinguished from the situation in other jurisdictions in which statutory provisions articulated schemes explicitly envisioning joint legislative and judicial activity in rule promulgation, see, e. g., 28 U.S.C. § 2072, the Pennsylvania provision delegated the entire procedural rule-making authority with respect to civil actions to the Supreme Court.[6] The breadth of this delegation is suggested by the closing paragraph of the statute, providing that "[f]rom and after the effective date of any rule promulgated under this Section . . . the operation of any act of Assembly relating to practice or procedure . . . and inconsistent with such rule, shall be suspended insofar as such act may be inconsistent with such rule." 17 P.S. § 61. Thus, under the statutory provision, procedural rules promulgated by the Supreme Court, without the participation of the legislature, had the full force of law. See *Dombrowski v. City of Philadelphia,* 431 Pa. 199, 245 A.2d 238, 241 (1968).

Given the scope of the statutory grant, the issue as to whether the Supreme Court's rule-making authority was inherent or whether it stemmed solely from 17 P.S. § 61 was

4. See Levin and Amsterdam, *Legislative Control Over Judicial Rulemaking: A Problem in Constitutional Revision,* 107 U.Pa.L.Rev. 1, 3 (1958); R. Pound, *The Rulemaking Power of the Courts,* 12 A.B.A.J. 599, 601 (1926).

5. This legislative grant of power to the Supreme Court was originally made in the Act of June 21, 1937, P.L.1982, No. 392, and was amended by the Act of March 30, 1939, P.L. 14, and the Act of August 25, 1959, P.L. 751. The grant, codified as 17 P.S. § 61, was repealed by Section 2 of the Judiciary Act Repealer Act, No. 1978–53. For purposes of convenience, we will refer to the provision, even though repealed, as 17 P.S. § 61.

6. The legislative grant, it should be noted, did not apply to "the courts of oyer and terminer to the Orphans' Courts and to criminal matters in the courts of quarter sessions." 17 P.S. § 61.

never put to a conclusive test; as long as the power was there, its source was not of great importance. And in 1968 this already somewhat dormant issue became moot. It was in that year that the Judiciary Article of the Pennsylvania Constitution was altered to grant the Supreme Court in Article V, § 10(c) "the power to prescribe general rules governing practice, procedure and the conduct of all courts." See note 3, *supra.* Section 10(c) further provides, very much like 17 P.S. § 61, that "[a]ll laws shall be suspended to the extent that they are inconsistent with rules prescribed under [this] provision." While the new Judiciary Article, given the breadth of the grant in 17 P.S. § 61, may have had only a limited impact on the *extent* of the Supreme Court's rule-making authority, it established the *source* of that authority—that source, after 1968, is unquestionably the Constitution.

Even in the pre-1968 era, an argument could have been made that a statute like 42 Pa. C.S. § 1703 applying the Open Meeting Law to the judiciary would have been unconstitutional. In the post-1968 era, that argument becomes compelling. For once it becomes clear—as it surely is now—that the rule-making power is vested by the Constitution in the judiciary, any legislative intrusion into that power must be viewed with the greatest of skepticism. And an intrusion which threatens members of the Supreme Court with summary offense sanctions simply for conducting their rule-making deliberations in the ways that they have for years in the past conducted them, is serious enough to constitute a violation of the separation of powers doctrine.

## B

Notwithstanding the explicit language of Article V, § 10(c), four central arguments might be offered in support of Section 1703's constitutionality. An analysis of such positions exposes their respective weaknesses and demonstrates the absence of a constitutional basis on which Section 1703 might rest.

1. It could be argued that while Article V, § 10(c) does grant rule-making authority to the judiciary, that grant is not exclusive and allows the General Assembly to exercise concurrent power in the area. If the power is concurrent, the argument would proceed, the General Assembly has not exceeded constitutional bounds in enacting Section 1703.

The major response to this argument is that there is simply no substantial support for the proposition that the grant of authority in Article V, § 10(c) is anything other than exclusive. Particularly when the constitutional provision is viewed against the background of its predecessor statute, i. e., 17 P.S. § 61, which itself delegated such a broad scope of authority to the Supreme Court, it would be anomalous to conclude that Section 10(c) is nothing more than a grant of concurrent power. Moreover, the constitutional provision's explicit statement, see page 4, *supra,* that court-made rules will prevail against any statutes that might be inconsistent with them would be incongruous with a scheme in which the legislature exercised concurrent rule-making power. This Court has noted, "a power does not inhere to the legislature if it has specifically been . . . entrusted to another co-equal branch of government," *Commonwealth v. Sutley,* 474 Pa. 256, 378 A.2d 780, 788 (1977). The United States Court of Appeals for the Third Circuit was correct in concluding that "the Pennsylvania Constitution gives the state's supreme court exclusive power to establish rules of procedure for state courts" and that "the legislature . . . is *without power to control procedure." Garrett v. Bamford,* 582 F.2d 810 at 814 (1978) (emphasis added). See also Goodrich-Amram 2d, page 9 (1976).

2. In a somewhat related argument, it could be urged that insofar as it protects the judiciary, the separation of powers doctrine only protects that branch against incursions into its control and conduct of actual pieces of adversary litigation and that the doctrine is inapplicable in situations in which the Supreme Court is exercising "non-judicial" (i. e., rule-making) powers. Adopting this argument would allow one readily to accept the long line of cases holding

that the General Assembly may not impair final judgments, or otherwise interfere with the course of ongoing or completed litigation, see, e. g., *Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577, 579 (1949), and cases cited therein, while rejecting the proposition that the legislature may not intrude on and affect the rule-making process.

Even if one accepts the notion that certain explicit constitutional powers of the judiciary are "judicial" and others are "non-judicial," [7] there are at least two answers to this argument. First, there is convincing support for the proposition that the rule-making power is "judicial" in nature. Dean Roscoe Pound, for instance, observed that "procedure of courts is something that belongs to the courts rather than to the legislature, whether we look at the subject analytically or historically" and concluded that "if anything was received from England as a part of our institutions, it was that the making of . . . general rules of practice was a *judicial* function." R. Pound, *The Rule-Making Power of the Courts*, 12 A.B.A.J. 599, 601 (1926) (emphasis added).

Secondly, the separation of powers doctrine has historically protected the judiciary against incursions into areas other than its conduct of adversary litigation. Most prominently, it has been recognized for many years that regulating bar admissions and disciplining members of the bar are as much judicial functions and as protected against legislative incursion as are, for instance, adjudications issued in traditional adversary litigation. As this Court has noted, "The admission of an attorney to practice before a court is a judicial act . . . [and] [a] statute which would constitute an encroachment on that function 'must be regarded as a vain attempt by the Legislature to exercise a power which it does not possess.'" *In re Shigon*, 462 Pa. 1, 329 A.2d 235, 240 n.14 (1974), and cases cited therein. It is clear, therefore, that the separation of powers doctrine protects more in

7. Of course, if one concludes that what is a "judicial power" is to be defined by the Constitution and not by an abstract analysis of what functions are peculiarly "judicial" in nature, then, in light of Article V, § 10(c), the rule-making power would clearly be classified as "judicial."

the judiciary than the conduct of litigation; given the explicit mention of rule-making in the Constitution, it would be unreasonable to conclude that that power does not enjoy the doctrine's protection.

3. Even if one accepts (a) the exclusivity of the judiciary's rule-making power as provided in Article V, § 10(c) of the Constitution, and (b) the applicability of the separation of powers doctrine to the rule-making area, it could be argued that Section 1703 represents no incursion into the judiciary's rule-making authority. Section 1703, it could be urged, does not mandate the promulgation or defeat of any particular rule. Rather, according to this argument, it simply provides a procedure which the Supreme Court must follow in its consideration of proposed rules and, as such, does not intrude on the powers granted the judiciary by Article V, § 10(c).

■ This argument gives an unjustifiably narrow reading to the Supreme Court's constitutional power to "prescribe general rules governing practice, procedure and the conduct of all courts." At the same time, it substantially underestimates the intrusion represented by Section 1703's making the Open Meeting Law applicable to the courts. In the absence of any language indicating otherwise, there is no reason to think that the power "to prescribe" rules does not carry with it the power to decide *how* rules are prescribed.[8] If the Constitution's draftsmen had intended to allow the General Assembly to prescribe the method by which the Supreme Court would promulgate rules, one would have expected that they would have explicitly so provided. Without such provision, it is difficult, in light of the language of the Constitutional provision, to find any such implicit legislative power.

8. This proposition could be tested by imagining that the Supreme Court promulgated a set of rules explicitly setting forth the procedure by which it would carry out its rule-making responsibilities. It would be difficult to conclude that this set of rules did not appropriately come within the Supreme Court's power under Article V, § 10(c).

 Even apart from the language of Section 10(c), a scheme under which the General Assembly has the power to dictate the methods by which the Supreme Court should promulgate rules is inconsistent with much of the policy underlying the separation of powers doctrine. For such power injects the General Assembly in a pervasive and insistent fashion into the carrying out of what the Constitution has explicitly established as a judicial function. Even if one were to ignore the potentially significant relationship between methods of promulgating rules and the rules that finally emerge, the General Assembly's insertion of itself into the structure of the rule-making process is inconsistent with the mandate of the separation of powers doctrine that the judiciary be kept "a separate, distinct and independent entity in government." *Commonwealth v. Sutley,* 474 Pa. 256, 378 A.2d 780, 783 (1977) (quoting from *Commonwealth v. Widovich,* 295 Pa. 311, 145 A. 295, 299 (1929)). Indeed, it is not at all clear that the independence of the judiciary, the preservation of which is one result of the separation of powers doctrine, would be any more compromised by the General Assembly promulgating a single rule in direct violation of Article V, § 10(c), than by the legislative intrusion into the making of *all* rules which is represented by Section 1703.

4. A fourth argument could be made that given the relatively open and participatory fashion in which this Court had promulgated rules prior to the passage of Section 1703,[9] the compulsion of that provision is, as a matter of practical effect, so minor as not to represent a violation of the separation of powers doctrine.

However, the practical immediate effect of Section 1703 is far less important than the principle of the separation of powers and the policies that it represents. In the instant situation wnat is to be protected is not per se the power of the Supreme Court to carry on its rule-making in a more closed fashion than Section 1703 mandates but rather the principle that the power to make rules is that of the judici-

9. Cf. Pa. Rules of Judicial Administration 103, 311.

ary and the judiciary alone. Viewed from this perspective, it is understandable how the separation of powers doctrine has been thought to allow and indeed mandate "the court . . . to resist, temperately, though firmly, *any* invasion of its province, whether great or small." *Commonwealth v. Sutley,* 474 Pa. 256, 378 A.2d 780, 783 n. 5 (1977) (quoting *DeChastellux v. Fairchild,* 15 Pa. 18, 21 (1850)) (emphasis added).

## C

Our conclusion that Section 1703 is unconstitutional is reinforced by an examination of developments in other jurisdictions. Both the Nevada and the Michigan Supreme Courts have decided the precise question presented here, i. e., the constitutionality of applying an Open Meeting Law to the judiciary's rule-making functions. Both courts have held such application unconstitutional.[10] In *In Re 1976 Pa. 267,* 400 Mich. 660, 255 N.W.2d 635 (1977), the Michigan Supreme Court, while recognizing the "laudable goal" in the challenged statute, 255 N.W.2d at 637, held that it represented "an impermissible intrusion into the most basic day-to-day exercise of the constitutionally derived judicial powers . . . " *id.;* the Michigan constitutional scheme is analogous to that in Pennsylvania with an express grant of authority to the Supreme Court to govern the practice and procedure within the courts. *Id.* at 636. In the Nevada litigation, *Goldberg v. Eighth Judicial District Court,* 572 P.2d 521 (1977), the Nevada Supreme Court did not even have an explicit constitutional grant of rule-making authority to the judiciary to apply; nevertheless, relying on what it saw as the judiciary's "inherent powers to administer its affairs . . . which include rulemaking," 572 P.2d at 522, the Court held that the challenged statute "as applied to judicial bodies, is an unconstitutional infringement on the inherent powers of the judiciary which violates the doctrine of separation of powers." *Id.*

**10.** Perhaps just as significantly, there appear to be no states whose Supreme Courts have upheld the constitutionality of such provisions against a challenge based on the judiciary's rule-making authority.

534

Moreover, an analysis of Open Meeting Laws around the country suggests that the applicability of such laws to any part of the judiciary is more the exception than the rule.[11] Indeed, states such as Hawaii, Massachusetts, New Jersey and Washington have thought the matter so important as to include an explicit statement in their Open Meeting Laws that the courts are excluded from coverage.[12] And, perhaps reflecting a concern for separation of powers issues even in the context of a Constitution which does not explicitly grant rule-making authority to the judiciary, the federal government in the Sunshine Act does not include the judiciary within its scope of coverage. See 5 U.S.C. § 552(b), (e).

### D

While the separation of powers doctrine does not "contemplate total separation of [the] three . . . branches of Government," *Buckley v. Valeo,* 424 U.S. 1, 104, 96 S.Ct. 612, 675, 46 L.Ed.2d 659 (1976), the existence of appropriate overlap between branches with respect to some functions of government does not mean that such overlap is appropriate with respect to all functions. The Pennsylvania Constitution grants the judiciary—and the judiciary alone— power over rule-making. In enacting Section 1703, the General Assembly has attempted to assume some of that power, but to our minds, the arguments justifying that attempt are inadequate in light of doctrines developed in this and other jurisdictions. We conclude, in sum, that Section 1703 simply cannot be reconciled with the constitutional scheme of the Commonwealth of Pennsylvania.

11. It is of particular interest that Florida, the state which moved earliest and which is generally regarded as the most progressive in the area of expansive Open Meeting Laws, see Wickham, *Let the Sun Shine In,* 68 N.W.L.Rev. 480, 491 (1973), has itself excluded the judiciary from the scope of its act's coverage. See Fla.Stat.Ann. 286.011, Fla.Op.Att.Gen. 071–32. And the Supreme Court of Florida has suggested that this exclusion is mandated by the separation of powers doctrine. *Canney v. Board of Public Instruction,* 278 So.2d 260, 262 (1973).

12. See Hawaii Rev.Laws, § 92–6; Mass.Gen.Laws Ann. ch. 30A, § 11A; N.J.Rev.Stat. 10:4–8; Wash.Rev.Code Ann. § 42.30.020. See also Idaho Code Ann., § 67–2341; Miss.Code Ann. § 25–41–3(a).

Respectfully yours,

MICHAEL J. EAGEN
 Chief Justice
HENRY X. O'BRIEN
SAMUEL J. ROBERTS
THOMAS W. POMEROY, Jr.
ROBERT N. C. NIX, Jr.
LOUIS L. MANDERINO
ROLF LARSEN
 Justices.

## APPENDIX

IN THE
SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

| | | |
|---|---|---|
| IN RE: | : | NO. |
| | : | |
| AMENDMENT OF RULES OF | : | CIVIL PROCEDURAL RULES |
| CIVIL PROCEDURE | : | DOCKET NO. |

## ORDER

EAGAN, Chief Justice.

AND NOW, November 14, 1978, Rules of Civil Procedure 51, 52 and 76 are hereby amended to read as follows:

## RULE 51. Title and Citation of Rules

All rules adopted by the Supreme Court under the authority [of the Act of June 21, 1937, P.L. 1982, as amended and supplemented, 17 P.S. § 61 et seq., or] of Article V, Section 10(c) of the Constitution of 1968, *or of any Act of Assembly,* shall be known as the Pennsylvania Rules of Civil Procedure and may be cited as "Pa.R.C.P. No. ——."

> NOTE: By order dated December 31, 1968 all statutes and rules governing practice and procedure in actions and proceedings in courts of record and courts not of record were continued in force until suspended, revoked or modified pursuant to Article V of the Constitution.

RULE 52. Effective Date of Rules

Each rule adopted by the Supreme Court under the authority [of the Act of June 21, 1937, P.L. 1982, as amended and supplemented, 17 P.S. § 61 et seq., or] of Article V, Section 10(c) of the Constitution of 1968, *or of any Act of Assembly,* shall become effective upon the date specified by the Supreme Court in promulgating the rule.

RULE 76. Definitions

The following words and phrases when used in any rule promulgated by the Supreme Court under the authority [of the Act of June 21, 1937, P.L. 1982, as amended and supplemented, 17 P.S. § 61 et seq., or] of Article V, Section 10(c) of the Constitution of 1968, *or of any Act of Assembly,* shall have the following meanings, respectively, unless the context clearly indicates otherwise or the particular word or phrase is expressly defined in the chapter in which the particular rule is included:

. . . . .

*"general rule," a Rule of Civil Procedure promulgated by the Supreme Court of Pennsylvania under the authority of Article V, Section 10(c) of the Constitution of 1968 or of any Act of Assembly* ;

. . . . .

*"local rule," a rule of civil procedure promulgated by a court of common pleas* ;

. . . . .

"rule," [any] *a* Rule of Civil Procedure promulgated by the Supreme Court under the authority of [the Act of June 21, 1937, P.L. 1982, as amended and supplemented, 17 P.S. § 61 et seq., or] Article V, Section 10(c) of the Constitution of 1968 *or of any Act of Assembly* ;

. . . . .

The term "general rule" wherever it appears in the following Rules of Civil Procedure is hereby amended to read "local rule":

| | | |
|---|---|---|
| Rule 233(a)(2)(c) | Rule 1524 | Rule 2205 |
| Rule 1009(f) | Rule 1530(b) | Rule 2232(a) |
| Rule 1047(b) | Rule 1534(a) | Rule 2353(c) |
| Rule 1053(d) | Rule 1534(b) | Rule 2959(b) |
| Rule 1064(c) | Rule 1566(a) | Rule 2985(b)(3) |
| Rule 1074(b)(3) | Rule 1572(a) | Rule 3110(c) |
| Rule 1137(c) | Rule 2056(b) | Rule 3112(c) |
| Rule 1504(b)(3) | Rule 2082 | Rule 3128(d) |
| Rule 1507 | Rule 2132(c) | Rule 3130 |

The procedures followed in the promulgation of the amendments adopted by this Order, even though not in compliance with the Public Agency Open Meeting Law (P.L. 486, No. 175) are valid. See the Court's letter of address of November 14, 1978, concluding that 42 Pa.C.S. § 1703 is unconstitutional.

This Order is effective immediately upon publication in the Pennsylvania Bulletin.

## EXPLANATORY COMMENT

The enactment of the Judicial Code and Judiciary Act Repealer Act, both effective generally as of June 27, 1978, introduced new terminology into the law governing judiciary and judicial procedure, requiring amendment of Rules of Construction 51, 52 and 76 and the various other rules enumerated in the amendment. Specifically, Definitions Section 102 of the Judicial Code, 42 Pa.C.S. § 102, defines "general rule" to mean a rule promulgated by the Supreme Court. The Rules of Civil Procedure use the term "general rule" to mean a rule promulgated by a local court of common pleas. The amendments bring the Rules of Civil Procedure into conformity with the Judicial Code. They are technical in nature and leave procedure and practice unchanged.

Rule 51, Title and Citation of Rules, Rule 52, Effective Date of Rules, and Rule 76, Definitions, also require technical amendment. The reference in those rules to the rule-making Enabling Act of June 21, 1937, P.L. 1982, is deleted since that act has been specifically repealed by the Judiciary Act Repealer Act of 1978. The rule-making power of the Supreme Court is constitutionally derived from Article V,

Section 10(c) of the Constitution of 1968 and from its King's Bench power which is specifically preserved by Section 502 of the Judicial Code, 42 Pa.C.S. § 502. In addition, the Judicial Code delegates to the Supreme Court rule-making power in substantive areas not traditionally within the scope of practice and procedure. The amendments to Rules 51, 52 and 76 take recognition of that fact by referring generally to Acts of Assembly. This will encompass the Judicial Code and subsequent amendments thereto.

By Order of the Civil Procedural Rules Committee,

Philip W. Amram, Chairman