**John G. BERGDOLL, K. Robin Davis and Gerald C. Grimaud, Petitioners,**

v.

**Honorable Yvette KANE, Secretary of the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 20, 1996.

Decided May 19, 1997.

Leonard N. Sosnov, Wilmington, DE, for petitioners.

Calvin R. Koons, Senior Deputy Attorney General, Harrisburg, for respondent.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, KELLEY, FLAHERTY and LEADBETTER, JJ.

FLAHERTY, Judge.

Before this court in our original jurisdiction are cross motions for judgment on the pleadings or summary judgement filed by John G. Bergdoll, K. Robin Davis, Gerald C. Grimaud (Petitioners), the Pennsylvania Bar Association (PBA), and the respondent, Yvette Kane, Secretary of the Commonwealth of Pennsylvania (Secretary).

This case originated on October 27, 1995, when Petitioners filed an "Application for leave to file Complaint in Quo Warranto" in the Pennsylvania Supreme Court. Petitioners sought to enjoin Secretary from placing on the November 7, 1995 ballot, a proposed amendment to Article I, Section 9 of the Pennsylvania Constitution, changing the rights of persons accused of crimes to confront witnesses against them and allowing the General Assembly to enact laws regarding the manner in which children may testify in criminal proceedings, including the use of videotaped depositions and testimony by closed-circuit television. After Secretary filed an answer and Petitioners filed a reply, the Supreme Court transferred the matter to this court, under our original jurisdiction, citing 42 Pa.C.S. § 761(a)(1).

On November 2, 1995 a hearing was conducted on the requested preliminary injunctive relief. At the hearing, this court granted the application filed by the PBA on November 1, 1995, to intervene. This court then denied the requested preliminary relief, which was affirmed by the Supreme Court on November 6, 1995. On November 7, 1995, a majority of the electorate voted affirmatively on the ballot question.

Petitioners then filed an amended complaint on November 20, 1995. Secretary filed an answer with new matter on November 21, 1995, and Petitioners filed a response thereto on December 18, 1995. Thereafter the parties filed cross motions for judgment on the pleadings or summary judgment, which are presently before us.

■ A motion for judgment on the pleadings in this court's original jurisdiction is in the nature of a demurrer; all of the opposing party's allegations are viewed as true and only those facts which have been specifically admitted by him may be considered against him. The court may only consider the pleadings themselves and any documents properly attached thereto. *Pennsylvania Association of Life Underwriters v. Foster*, 147 Pa.Cmwlth. 591, 608 A.2d 1099, 1101 (1992). Pursuant to Pa. R.C.P. 1035(b), a motion for summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Summary judgment is appropriate in an action for declaratory or injunctive relief. *Pennsylvania Medical Providers Assoc. v. Foster*, 149 Pa.Cmwlth. 203, 613 A.2d 51, 52 (1992).

The issues before this court are (1) whether Petitioners have standing to challenge the constitutional amendment, (2) whether the ballot question contained two amendments to the Constitution and (3) whether the amendment abrogates a natural right that may not be taken away.

■ Initially, Secretary maintains that neither the individual Petitioners, who are attorneys, taxpayers and electors in this Commonwealth, nor the PBA, which is a professional association of attorneys, have standing to challenge the constitutionality of the amendment to Article I, Section 9 of the Pennsylvania Constitution. "Generally, in order to have standing, a party must have an interest in the controversy that is distinguishable from the interest shared by other citizens." *Sprague v. Casey*, 520 Pa. 38, 43,

550 A.2d 184, 187 (1988). The interest must be substantial, direct and immediate. *Id.* Secretary maintains that a challenge to the constitutionality of the amendment, which modifies the rights of an accused in criminal proceedings, would have to be challenged by a criminal defendant who is affected by it. Plaintiffs can only assert the common interest of all citizens.

The individual Petitioners maintain they have standing as they were unable to vote on the ballot question as it contained two questions but permitted only one answer. In addition, they, as attorneys, along with the PBA, which is comprised of attorneys, are sworn to defend the Constitution and the ballot question, as presented, violated Article XI, Section 1, by posing two amendments in one question. We agree that the Petitioners and PBA have a substantial, direct and immediate interest in the matter, and thus have standing. In addition, we note that this case is distinguishable from *Lincoln Party v. General Assembly,* 682 A.2d 1326 (Pa.Cmwlth. 1996), wherein this court held that the Lincoln Party did not have standing to challenge the amendment at issue. In that case, the Lincoln Party, an unincorporated association, failed to identify any of its members, the nature of its membership and neglected to assert any direct and immediate harm. Here, the individual Petitioners along with the PBA, an association of attorneys, are sworn to defend the Pennsylvania Constitution, and they along with their clients were and will be directly impacted by the amendment.

■ As we have determined that Petitioners have standing, our next inquiry is whether the ballot question contained two amendments to the Constitution contained in one question in violation of Article XI, Section 1 which provides that "[w]hen two or more amendments shall be submitted they shall be voted upon separately." The ballot question read:

> Shall the Pennsylvania Constitution be amended to provide (1) that a person accused of a crime has the right to be "confronted with the witnesses against him," instead of the right to "meet the witnesses face to face," and (2) that the General

Assembly may enact laws regarding the manner by which children may testify in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television?

Petitioners argue that this ballot question, and its subsequent passage, amended both Article I, Section 9, the "Confrontation Clause," and Article V, Section 10(c), which grants to the Supreme Court "the power to prescribe general rules governing practice, procedure and the conduct of all courts ..." We agree.

■ Although Article V, Section 10(c) is not mentioned, the ballot question, by granting to the General Assembly the authority to enact laws regarding the manner by which children testify at criminal proceedings, has effectively amended Article V, Section 10(c), which vests exclusive authority in the Supreme Court over practice and procedure in our courts. Article V, Section 10(c) provides that "the Supreme Court shall have the power to prescribe general rules governing practice, procedure, and the conduct of all courts." Although Secretary maintains that Article V, Section 10(c) provides only a "general, residual grant of authority to the Supreme Court to exercise general supervisory and administrative authority over the unified judicial system" (Secretary's brief at 11), as enunciated by our Supreme Court, "[t]he Pennsylvania Constitution grants the judiciary—and the judiciary alone—power over rule-making." *In re 42 Pa.C. S. § 1703,* 482 Pa. 522, 534, 394 A.2d 444, 451 (1978). "There is simply no substantial support for the proposition that the grant of authority in Article V, Section 10(c) is anything other than exclusive." *Id.* at 529, 394 A.2d at 448.

■ Although Article V, Section 10(c) imposes restrictions on the Supreme Court's exclusive rule-making authority by stating it may "neither abridge, enlarge nor modify the substantive rights of any litigant," we believe that the manner in which testimony is to be received in court is procedural and thus within the rule-making authority of the Supreme Court. How the testimony of witnesses is to be received in a courtroom, and the choice of the procedures to be employed, i.e., video-

taped depositions, closed-circuit television, is a procedural matter which is entrusted to the judiciary under Article V, Section 10(c). "[W]e know of no authority which would vest power in the Legislature to tell the Judiciary *how to hear* and dispose of a case...." *Appeal of Borough of Churchill*, 525 Pa. 80, 88, 575 A.2d 550, 554 (1990) (emphasis added).

By asking the voters of Pennsylvania whether the Constitution should be amended to provide a person accused of a crime the right to be confronted with the witness against him, an amendment to Article I, Section 9 and whether the General Assembly should be afforded the right to enact laws concerning the manner in which children testify in criminal proceedings, a procedural function which is controlled by the Supreme Court in accordance with Article V, Section 10, the ballot question, in contravention of Article XI, Section 1, posed two amendments to the Constitution with a single question.

Therefore, we declare the vote on the ballot question null and void, as it contained two amendments in one question.[1] Accordingly, Petitioner's motion for summary judgment is granted, and Secretary's motion for summary judgment is denied.

### ORDER

NOW, May 19, 1997, the Petitioners motion for summary judgment is granted, and Secretary's motion for summary judgment is denied.

PELLEGRINI, Judge, dissenting.

I respectfully dissent from the majority's holding that the ballot question passed by

voters at the November 1995 election was unconstitutional as it presented two separate questions and infringed upon the Supreme Court's procedural powers.

The issue is whether a ballot question to amend Article I, Section 9 of the Pennsylvania Constitution is violative of the Pennsylvania Constitution.[1] Article I, Section 9, prior to the ballot question, had read:

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and in prosecutions by indictment or information, a speedy public trial by an impartial jury of this vicinage

Striking down a trial court's allowance of child testimony via closed circuit television, our Supreme Court interpreted Article I, Section 9 to ensure an accused with the right to meet a witness face to face. *Commonwealth v. Ludwig*, 527 Pa. 472, 594 A.2d 281 (1991). In *Ludwig*, a child victim was to testify against the man who had allegedly sexually abused her. At the preliminary hearing, she froze and testified that she couldn't remember what had happened. Therefore, the trial court permitted her to testify via closed circuit television at both a second preliminary hearing and at the trial. The actor was subsequently convicted and appealed, contending that the use of closed circuit television violated his constitutional right to confront his accuser guaranteed by both the Sixth Amendment to the United States Constitution, as well as Article I, Sec-

1. This opinion does not hold that it is unconstitutional to amend Article V, Section 10(c) by the amendment that was proposed, but only that any such constitutional amendment must conform to Article XI, Section 1 of the Constitution and be submitted to the electorate as a separate question, rather than in combination with a proposed amendment to another article.

1. On October 27, 1995, John G. Bergdoll, K. Robin Davis and Gerald C. Grimaud (Petitioners) filed an "Application for Leave to file Complaint in Quo Warranto" in the Pennsylvania Supreme Court, in which they sought to enjoin the Secretary of the Commonwealth from placing a proposed Amendment to Article I, Section 9 of the Pennsylvania Constitution on the November 7,

1995 ballot. The Supreme Court transferred the matter to our Court, and a hearing was held on November 2, 1995, at which the Pennsylvania Bar Association (PBA) was granted its application to intervene. Also at that hearing, we denied Petitioners' request for preliminary injunctive relief. The Supreme Court affirmed that determination, and on November 7, 1995, a majority of the electorate voted affirmatively on the amendment question. Petitioners subsequently filed an amended complaint, and the Secretary filed an answer and new matter to which Petitioners responded. Currently before us are the parties' cross motions for judgment on the pleadings or summary judgment.

tion 9 of our State Constitution. Our Supreme Court recognized that while Article I, Section 9 was based on the Sixth Amendment of the United States Constitution providing that a defendant in a criminal case "shall enjoy the right . . . to be confronted with the witnesses against him," that Article I, Section 9 was more restrictive than its federal counterpart because it required the confrontation to be "face to face". *Id.* 527 Pa. at 476, 594 A.2d at 283.

To change the "face to face" requirement of Article I, Section 9, a ballot question was proposed and was put on the November 1995 ballot and presented to the voters. That question read:

Shall the Pennsylvania Constitution be amended to provide (1) that a person accused of a crime has the right to be "confronted with the witnesses against him," instead of the right to "meet the witnesses face to face," and (2) that the General Assembly may enact laws regarding the manner by which children may testify in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television?

Because the ballot question was passed by a majority of the electorate, Article I, Section 9 of the Constitution now reads:

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and in prosecutions by indictment or information, a speedy public trial by an impartial jury of this vicinage . . . Notwithstanding the provisions of this section, the General Assembly may by statute provide for the manner of testimony of child victims or child material witnesses in criminal proceedings, including the use of videotaped depositions or testimony by closed circuit televisions.

Petitioners contend that the ballot question and its subsequent passage violated Article XI, Section 1 of the Constitution which provides that "[w]hen two or more amendments shall be submitted they shall be voted upon separately" because it really constitutes two proposed amendments, one that amended Article I, Section 9, and also one that implicitly amends Article V, Section 10(c) in that it affected the Supreme Court's procedural right to control the manner in which children may testify in criminal proceedings. Article V, Section 10(c) provides:

The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts . . . if such rules are not consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant . . .

While I agree that if two or more unrelated propositions are submitted as one amendment, then Article XI, Section 1 would be violated, I believe that only one change was made here. Though Pennsylvania Courts have not yet faced this issue, we have faced the similar issue of whether a bill containing more than a single subject violates Article III, Section 3, which restricts the content of a bill to a single subject. In *Pennsylvania AFL–CIO by George v. Commonwealth,* 683 A.2d 691 (Pa.Cmwlth.1996), Judge Colins, in single-judge opinion, held that where substantive legislation is involved, a more expansive reading of the single subject clause has generally been applied. "This is so because the 'purpose' of substantive legislation is not constitutionally defined, but rather, . . . is normally left to the discretion of the legislature to define." *See also, Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986).

While not yet considered in Pennsylvania, other states have held that a single constitutional amendment may cover several propositions if they are not distinct or essentially unrelated. For instance, in *Hatcher v. Meredith,* 295 Ky. 194, 173 S.W.2d 665 (1943), the Supreme Court of Kentucky held that so long as all parts of the amendment are germane to the accomplishment of a single objective, and all are legitimately connected to one subject, then the proposed amendment is still proper. *Id.*

And, in *Andrews v. Governor of Maryland,* 294 Md. 285, 449 A.2d 1144 (1982), the Maryland Court of Appeals considered a separate

vote requirement almost identical to Pennsylvania's. That requirement, embodied in Article XIV, Section 1 of the Maryland Constitution, provides: "[W]hen two or more amendments shall be submitted ... to the voters of this state at the same election, they shall be so submitted as that each amendment shall be voted on separately." In determining whether the dual amendment of one chapter regarding the restructuring of the court system, and at the same time, another chapter regarding the right of removal, violated the separate vote requirement, the court stated:

> [T]he single subject and separate vote provisions of Article XIV, Section 1 are constitutional constraints on the legislature when proposing amendments to the Constitution. The provision, viewed as a whole, is intended to require a single amendment to deal with a single subject which may be ratified or rejected by a single vote. If the proposed changes deal with different or dissimilar subjects and seek to reach different objectives which require amendment, then the legislature must submit these proposals to the electorate so as to allow the electors to vote upon each separately. However, when two or more amendments dealing with the same subject are so functionally interrelated that they may have been submitted as one amendment, but, for purposes of highlighting their significance and to avoid confusion of the electorate, are set out individually, and when the connection and interdependence of such amendments are emphasized by making the passage of one contingent on the passage of the other to the effect that the proposals constitute a consistent and workable whole then, in such case, we hold that Article XIV, Section 1 requiring a separate vote on each amendment has not been violated. The legislature is entrusted with wide discretion in proposing amendments to the Constitution and when it does so to make obvious possible hidden side effects and to promote public awareness, we think it well within its constitutional prerogative.

*Id.*, 294 Md. 285, 297, 449 A.2d 1144, 1150.

Applying the rationale of the Pennsylvania law relating to the single clause requirement of bills, and of other states considering their analogous single vote requirements, I believe that the question posed to the electorate was proper. Even though the proposition in the instant matter was framed in two parts, both of those parts relate to the accomplishment of a single objective—the amendment of the right to confrontation, in particular, as it relates to child testimony. Though provisions of a constitution regarding its own amendment are to be narrowly construed, I do not believe that construction should be so restrictive as to require that every element to any change in amendment be separately set forth and voted upon. Because the ballot question only amends Article I, Section 9, I would hold that it does not violate Article XI, Section 1 of the Pennsylvania Constitution, prohibiting two amendments in the same question.

KELLEY and LEADBETTER, JJ., join in this dissenting opinion.

KELLEY, Judge, dissenting.

I join Judge Pellegrini's well-reasoned dissenting opinion. I write separately, however, to express the view that this court, as an arm of the government created by the people of the Commonwealth of Pennsylvania, should refrain from invalidating the amendment to art. I, § 9 of the Pennsylvania Constitution which was approved by the voters at the November 1995 election.

As the Pennsylvania Supreme Court has noted:

> The primary purposes of a constitution are to establish a government, define or limit its powers and divide those powers among its parts.... The United States Constitution established a government of limited and enumerated powers. Consequently, the national government possesses only those powers delegated to it.... State constitutions, on the other hand, typically establish governments of general powers, which possess all powers not denied by the state constitution.... Our state constitution functions this way and restrains these general powers by a Declaration of Rights....
>
> The Pennsylvania Constitution of 1776, our first post-colonial constitution, illustrates Pennsylvania's basic constitutional

scheme. It contains two parts: one which establishes a government and one which limits its powers. The first part, titled Declaration of Rights of Inhabitants of the Commonwealth or State of Pennsylvania, contains most of the language found in our present Article I. The second, titled Plan or Frame of Government for the Commonwealth or State of Pennsylvania, establishes a governmental system. This simple two-part format in itself evinces the draftsmen's intent to establish a government and to limit its powers.

*Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Insurance Company,* 512 Pa. 23, 28–29, 515 A.2d 1331, 1334 (1986) (citations omitted). *See also Monongahela Navigation Company v. Coons,* 6 Watts & Serg. 101, 117 (1843) (Huston, J., dissenting) ("There is, and must be, an unlimited power, on certain subjects, in every government; and it is often right, and often practised by the Legislature, to act on this principle. The use of a written Constitution is to fix limits to this otherwise absolute power; and in this sense peculiarly it is the supreme law of the land. Whatever is absolutely prohibited or positively enjoined cannot be altered until the Constitution is changed by the people, or by a revolution.")

As our Supreme Court has also noted:

The Constitution sets forth those rights and powers inherent in the people that are delegated to government and those powers which are reserved and retained by the people. In a sense, it is a power of attorney by the people to their designated officials acting as agents for the people and delineating the authority granted and the rights reserved. The provisions of a constitution specifying the rights reserved and retained by the people are generally referred to as the 'Bill of Rights' or in Pennsylvania the 'Declaration of Rights'....

Unless there is a federally protected right offended, the people, by way of amendment, are free to convey a power to their government if they choose to do so.... This view is reinforced by Article I, section 2 [of the Pennsylvania Constitution], which provides:

## § 2. Political powers

All power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness. For the advancement of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper.

Pa. Const. art. I, § 2.

Section 2 expressly recognizes the inherent power of the people reserved in Article I as well as their "indefeasible right to alter, reform or abolish their government in such manner as they may think proper"....

The restraint imposed under Article I is not upon the people in forming their government, but rather upon the government in the discharging of its functions. Restated, Article I does not restrain the power of the people, it restrains the governmental structure that the people have created.... In forming the government of this Commonwealth, the only restraint upon the people is that imposed under our federal constitution.

*Gondelman v. Commonwealth,* 520 Pa. 451, 467–69, 554 A.2d 896, 904–05 (1989) (citations omitted).

In the instant case, the Petitioners have not, and cannot, argue that the amendment which was approved by the people of this Commonwealth offends a federally protected right. As a result, the citizens of Pennsylvania were free to adopt this change to the basic structure of their government under art. I, § 2 of the Pennsylvania Constitution. *Gondelman.* The voters properly exercised *their* "inalienable and indefeasible right" to alter the form of *their* government by adopting the amendment to art. I, § 9 of the Pennsylvania Constitution at the November 1995 election. It is the function and the duty of this court, as an arm of that government, to accede to their instructions.

Accordingly, I respectfully dissent.