J-A16017-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| ARTHUR MONTGOMERY AND BARBARA J. MONTGOMERY, HUSBAND AND WIFE, | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | : : | |
| v. | : : | |
| R. OIL & GAS ENTERPRISES, INC., | : : | |
| Appellant | : | No. 1164 WDA 2015 |

Appeal from the Judgment Entered July 1, 2015
in the Court of Common Pleas of Venango County
Civil Division at No(s): Civil No 392-2014

BEFORE:    SHOGAN, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED MARCH 17, 2017**

Appellant, R. Oil & Gas Enterprises, Inc., appeals from the judgment

on the pleadings against it and in favor of Appellees Arthur and Barbara

Montgomery (the Montgomerys) entered on July 1, 2015.  We affirm.

This matter involves interpretation of a lease agreement entered into

by the parties' predecessors in interest.  The certified record reveals the

following.  On August 11, 1975, Donald and Melvena MacDonald (the

MacDonalds) entered into an oil and gas lease agreement (the Lease) with

Quaker State Oil Refining Corporation (Quaker State). The Lease permitted

Quaker State to drill for and produce oil and gas on 240 acres of land[1] the

---

[1] The 240 acres covered by the Lease consisted of several different tracts of
land, at least some of which were sold by the MacDonalds to other
landowners at some point after the MacDonalds entered into the Lease.

*Retired Senior Judge assigned to the Superior Court.

MacDonalds owned in Venango County. The duration was for a period of 10 years, and as long thereafter as oil and gas could be produced in paying quantities.

Venango County, Pennsylvania, the location of the leasehold, sits atop a geological formation known as the Onondaga Formation (the Formation). The Formation is made up of limestone strata that lie under a layer of Marcellus black shale and above a layer of Oriskany sandstone.[2] The Lease itself makes no distinction between oil and gas interests above and below the Formation. Rather, the terms of the Lease grant the lessee exclusive drilling rights to any oil and gas found under the 240 acres of surface land covered by the Lease.

On January 14, 1991, as a result of Quaker State's assignment to Pennsylvania General Energy Corp. (Pennsylvania General), Appellant's predecessor in interest, of Quaker State's oil and gas interest in the area above the Formation, two distinct subsurface estates were created: Area A, above the Formation, and Area B, below the Formation. Quaker State retained the oil and gas rights for Area B. On January 26, 2009, Pennsylvania General conveyed its interest in Area A to Appellant, R. Oil and Gas Enterprises, Inc.

---

[2] *See* Bradford Willard, *The Onondaga Formation in Pennsylvania*, 44 Journal of Geology 578, 578 (1936), *available at* http://www.jstor.org/stable/30067366.

In 2010, the Montgomerys purchased 32.218 acres of the MacDonald's land. The Montgomerys' land was a portion of the 240 acres of surface land covered by the Lease. On April 10, 2014, after observing Appellant's representatives and equipment on their land, the Montgomerys filed the instant action against Appellant seeking a declaration that Appellant no longer possessed oil and gas rights to the subsurface estates below their tract of land. Specifically, the Montgomerys averred that the Lease was "terminated by the terms and provisions of said Lease, including but not limited to the provision that requires the production of oil or gas in paying quantities and/or upon the failure of [Appellant] to make rental payments as required." Complaint, 4/10/2014, at ¶ 15.

Thereafter, Appellant filed an answer, which contained new matter asserting, *inter alia*, that the trial court lacked jurisdiction over the Montgomerys' lawsuit because of the failure to join indispensable parties. On August 22, 2014, the Montgomerys filed a motion for judgment on the pleadings. After briefing and oral argument on the motion, the trial court granted judgment on the pleadings to the Montgomerys. This timely appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant presents four issues for our review.

1. Whether [the] trial court's order terminating a portion of an oil and gas lease should be reversed when the [L]ease is not severable?

2. Whether [the] trial court order granting a motion for judgment on the pleadings to terminate a portion of an oil and gas lease should be reversed when parties which are indispensable parties to the lawsuit are not named as either plaintiffs or defendants?

3. Whether the trial court improperly granted a motion for judgment on the pleadings in favor of the [Montgomerys], terminating a portion of an oil and gas lease, even though a question of fact remained whether oil or gas could be produced from real estate governed by the [L]ease?

4. Whether the trial court improperly considered statements made in a consent order and agreement when deciding the motion for judgment on the pleadings?

Appellant's Brief at 6 (unnecessary capitalization omitted).

In the first and second issues raised on appeal, the substance of Appellant's argument is that the trial court lacked subject matter jurisdiction over this controversy because the Montgomerys failed to join indispensable parties. Specifically, Appellant contends that the Montgomerys' Land was not severable from the 240 acres of surface land covered by the Lease. Appellant's Brief at 19. Therefore, Appellant argues, the owners of the remaining surface land covering the leased property are indispensable parties. Additionally, Appellant argues even if the Montgomerys' Land is severable from the 240 acres of surface land covered by the Lease, the subsurface oil and gas estates are not severable; thus, the party that

purports to own the oil and gas rights to Area B[3] is an indispensable party. *Id*. at 21.

Our standard of review of these issues is *de novo* and our scope of review is plenary. **See Seneca Res. Corp. v. S & T Bank**, 122 A.3d 374, 380 (Pa. Super. 2015) (holding that whether a lease is severable is a question of law subject to *de novo* review); **see also N. Forests II, Inc. v. Keta Realty Co.**, 130 A.3d 19, 28–29 (Pa. Super. 2015) (citation omitted) ("The failure to join an indispensable party is a non-waivable defect that implicates the trial court's subject matter jurisdiction."); **S.K.C. v. J.L.C.**, 94 A.3d 402, 406 (Pa. Super. 2014) (citation omitted) (providing that whether a trial court possesses subject matter jurisdiction is a question of law subject to *de novo* review).

It is well-settled that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." 42 P.S. § 7250(a).

Our Supreme Court has previously determined:

> [U]nless all indispensable parties are made parties to an action, a court is powerless to grant relief. Thus, the absence of such a party goes absolutely to the court's jurisdiction. A party is indispensable when his

---

[3] For simplicity, we hereinafter refer to this party as Quaker State, although Quaker State may have since assigned its interest in Area B under the Lease to a different party.

or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. A corollary of this principle is that a party against whom no redress is sought need not be joined. In this connection, if the merits of a case can be determined without prejudice to the rights of an absent party, the court may proceed.

The determination of an indispensable party question involves the following considerations:

> 1. Do absent parties have a right or interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of the issue?
>
> 4. Can justice be afforded without violating the due process rights of absent parties?

*Bastian v. Sullivan*, 117 A.3d 338, 343 (Pa. Super. 2015) (citations and footnotes omitted).

One of the major factors involved in a determination of whether a party is indispensable in a lease context is whether the lease is severable. With respect to the Lease's severability, we are mindful of the following.

In determining whether an oil and gas lease is severable … there is no bright line rule requiring that a court first find that the intent of the parties is unclear as to entirety/severability before it may look to factors such as the conduct of the parties and the character of the consideration to determine whether an agreement is entire or severable. The central task is to ascertain the intent of the parties. That intent may be apparent from the explicit language of the lease or it may be obvious from

a construction of the agreement, including the nature of the consideration. In short, principles of construction may reveal the intent of the parties no less than the actual language addressing entirety/severability. Thus, absent express language that a lease is entire, a court may look to the lease as a whole, including the character of the consideration, to determine the intent of the parties as to severability and may also consider the circumstances surrounding the execution of the lease, **the conduct of the parties**, and any other factor pertinent to ascertaining the parties' intent. The court need not make a specific predicate finding of ambiguity before undertaking the inquiry; indeed, if the contract were crystal clear as to the parties' intent, severability likely would not be a contested issue.

*Seneca Res. Corp.*, 122 A.3d at 381 (internal alterations, quotation marks, ellipses, footnote, and citations omitted; emphasis added).

In *Seneca Res. Corp.*, this Court determined that the oil and gas lease at issue was not severable. In so doing, we focused on the language of the lease and the intent of the parties, noting that

[the lease was entered on January 1, 1962 pursuant to an agreement (the Agreement) the between the successors in interest to the appellant landowners and Seneca]. In the Agreement, the parties identified the total land to be leased as 25,000 acres. Additionally, in 1974, the [appellant landowners] assigned their rights to certain acreage implicated by the Lease to Koppers Company, Inc. ("Koppers"). In the Assignment, the [appellant landowners] clearly stated that the conveyance was subject to the rights provided [to the original lessee] under the Lease. Importantly, the [appellant landowners] stated that under the Lease, they "leased unto [the original lessee] 25,000 acres of land for the exploration and development of oil and gas under the terms and conditions therein set forth[.]" These documents evidence that the [appellant landowners] understood that the "leased premises" includes 25,000 acres, not separate and severable operated and unoperated acreages.

- 7 -

***Id.*** (citations and footnotes omitted). Thus, because the Agreement and the Assignment both identified the same acreage and rights, this Court concluded that the lease was intended to be entire and, therefore, was not severable. ***Id.*** at 385.

In the instant case, the Lease states, in relevant part, as follows.

…the lessor in consideration of the sum One Dollar in hand paid, the receipt of which is hereby acknowledge [(*sic*)], and in further consideration of the covenants and agreement hereinafter contained on the part the lessee to be kept and performed, hereby leases and grants unto lessee, its successors and assigns, together the exclusive right to drill wells and operate thereon to produce, save and take care said products, all for the term of Ten years from the date hereof and as long thereafter as oil and gas is or can be produced in paying quantities.

\* \* \*

The lessor further grants to the lessee all rights of way over said premises necessary for the purposes aforesaid, with the right to lay pipelines for the transportation thereon and thereover of oil, gas or water from said premises or other lands operated by the lease, to run electric and telephone lines over the leased premises, to erect necessary buildings thereon, and to remove all machinery, fixtures and buildings placed thereon by the lease; the right to use free from royalty, sufficient oil, gas and water produced from the premises for all operations thereon (provided that it finds said water at its own expense); **the right to subdivide and release the premises** and the right to surrender this lease at any time and thereupon be discharged from all obligations, covenants, and conditions herein contained.

\* \* \*

It is mutually agreed that upon the surrender of this lease by the lessee, the same shall thereafter be null and void. This lease shall be binding upon and extend to the parties hereto and

- 8 -

their respective heirs, personal representatives, successors and assigns.

Complaint, 4/10/2015, Exhibit B (emphasis added).

The Lease is distinguishable from that evaluated by this Court in *Seneca Res. Corp.* First, unlike the lease in *Seneca Res. Corp.*, the 240 acres at issue herein consisted of a number of distinct parcels. Further, the terms of the Lease specifically grant the lessee the right to "subdivide and release" the property. Lease at ¶ 4. Additionally, the final paragraph provides that the Lease terms are "binding upon and extend to the parties hereto and their respective heirs, personal representatives, successors and assigns." *Id.* at ¶ 13.

The parties do not dispute that the original lessors, the MacDonalds, by deed dated February 17, 2010, sold 32.318 acres of the leased property to the Montgomerys. Although the Lease does not mention the Onondaga Formation, Appellant admits that it acquired an interest in Area A in 2009, but "the interest of the lessee in the Lease below the top of the Onondaga formation [Area B] were [(*sic*)] retained by Quaker State … in an exception and reservation found in an Assignment dated January 14, 1991[.]" Appellant's Brief at 8. Thus, the actions of the parties, coupled with the language of the document, support a finding that the Lease is severable, both with respect to surface land ownership and to the ownership of oil and gas rights above and below the top of the Onondaga Formation.

In granting the Montgomery's motion for judgment on the pleadings, the trial court determined that, with respect to Appellant's interest in Area A, (1) the Lease had expired under its own terms prior to Appellant's ownership and (2) Appellant's predecessor in interest, Harmony Oil and Gas Company (Harmony), had abandoned the Lease. Trial Court Opinion, 6/30/2015, at 7-15. A review of the record demonstrates that the court's decision affected only Appellant's interests and "did not disturb the rights of any other interests of the [L]ease," in particular because the Lease had lapsed due to abandonment. Trial Court Opinion, 11/4/2015, at 7 (unnumbered). Moreover, the court's order makes no restriction on any other leaseholder's rights and no other parties are necessary to dispose of the claims raised herein. Thus, the record supports the trial court's determination that it had subject matter jurisdiction over this case as the merits could be determined without prejudice to the rights of an absent party.

Accordingly, because the Lease is severable and because the court's order is properly confined to the Montgomerys' claim, Appellant's argument that this action must fail for failure to join indispensable parties is without merit.

In its third issue, Appellant argues that the trial court erred in granting the Montgomerys' motion for judgment on the pleadings because "a factual question remains [as to] whether oil or gas can be produced in paying

quantities." Appellant's Brief at 24. We address this claim mindful of the following.

> Our scope of review on an appeal from the grant of judgment on the pleadings is plenary. Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings.
>
> A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. On appeal, we accept as true all well-pleaded allegations in the complaint.
>
> On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly be tried before a jury or by a judge sitting without a jury.
>
> Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

***Altoona Reg'l Health Sys. v. Schutt***, 100 A.3d 260, 265 (Pa. Super. 2014) (citations and quotation marks omitted).

The trial court rejected Appellant's argument, holding instead that from the pleadings it was clear no oil or gas had been produced in paying

quantities on the Montgomerys' Land since 2001 and Appellant's predecessor in interest had breached the implied obligation to explore and develop the property "with reasonable diligence." Trial Court Opinion, 6/30/2015, at 7-12. Thus, the court held that the Lease is "null, void, and of no force and effect pertaining to [the Montgomerys' Land]." *Id.* at 14. We agree with the well-reasoned opinion of the trial court and, following our review of the certified record, the parties' briefs, and the relevant law, we conclude that the opinion of the Honorable Robert L. Boyer states findings of fact that are supported by the record, evidences no abuse of discretion or errors of law, and thoroughly and correctly addresses and disposes of Appellant's third issue and supporting argument. Accordingly, we adopt the trial court's opinion, at pages 7 through 14, filed on June 30, 2015, as our own.

Finally, Appellant contends that the trial court improperly considered statements made in a March 9, 2009 consent order and agreement between Appellant and the Pennsylvania Department of Environmental Protection (DEP) when deciding the motion for judgment on the pleadings. Appellant's Brief at 26-30. The consent order outlines an agreement Appellant made with the DEP to purchase wells, including those on the Montgomerys' Land, which had previously been deemed "abandoned" during Harmony's ownership. Appellant's Answer and New Matter, 5/13/2014, Exhibit 1 at 1. Pursuant to this agreement, Appellant acknowledged that Harmony, in

violation of a prior agreement with the DEP, had failed to plug or produce 668 wells. *Id.* at 1-2. Appellant's request to purchase those wells and bring them into compliance with any relevant environmental statutes was granted, and an order was entered which set forth the obligations of both parties, including civil penalties that would arise for non-compliance. *Id.* at 2-9. The record reflects that the challenged document was attached in its entirety to Appellant's answer and new matter, filed on May 13, 2014. Appellant's Answer and New Matter, Exhibit 1.

As noted above, in determining whether to grant a motion for judgment on the pleadings, the court "must confine its consideration to the pleadings and relevant documents" properly attached thereto. *Altoona Reg'l Health Sys.*, 100 A.3d at 265. Here, the trial court relied in part on the consent order and agreement to determine that the wells were abandoned prior to Appellant's acquisition. Trial Court Opinion, 6/30/2015, at 14. However, Appellant argues that, pursuant to Pennsylvania Rule of Evidence 408, offers of compromise are inadmissible when offered to prove liability; thus, the consent order and agreement could not be considered when ruling on the Montgomerys' motion. *See* Pa.R.E. 408(a). The Rule provides as follows.

> **(a) Prohibited Uses.** Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim.

**(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Pa.R.E. 408.

We disagree with Appellant that use of the consent order and agreement to support granting judgment on the pleadings violated Rule 408. The Montgomerys herein are not parties to the consent order and agreement between Appellant and the DEP. Additionally, the consent order and agreement at issue has no bearing on whether the Montgomerys' Land remains subject to the Lease. As the trial court explained,

> [t]he Commonwealth Court addressed non-parties to COAs in **City of Chester v. PUC**, 773 A.2d 1280, 1286 (Pa. [Cmwlth]. 2001), wherein the Commonwealth Court noted the problems with a PUC consent decree, the court itself was not bound by that consent decree. As a judicial entity, this court is similarly not bound by the COA between Appellant and the DEP. Likewise, Appellee was not a party to the Consent Order and Agreement, and therefore would not be bound by its terms, following the principle of contract law that a non-party cannot be bound without consent.
>
> A decision by a Pennsylvania Environmental Hearing Board directly deals with the language seen in the COA at bar. In **Mary E. Collier & Ronald M. Collier v. Commonwealth et al.**, 2012

WL 2950743 (Pa. Env, Hrg. Bd. 2012), the Board entertained an argument by the plaintiffs challenging identical language in a similar Consent Order [and] Agreement. Acknowledging that the Board could not determine whether or not the provision would be admissible before the Court of Common Pleas of Indiana County, the Board nevertheless stated the Colliers could not be bound by the COA, under the principles stated in **City of Chester**….

Certainly, the court in deciding this matter does not need the [DEP's] authorization in deciding the factual basis of a case. Further, the Montgomerys were not parties to the agreement between the COA between the DEP and Appellant.

Trial Court Opinion, 11/4/2015, at 8-9 (unnumbered).

Moreover, we find disingenuous Appellant's argument that the language of the consent order itself, which provides that "[t]he Parties do not authorize any other persons to use the Findings in this Consent Order and Agreement in any matter or proceeding," bars its use in this proceeding. As the trial court pointed out, "the [Pennsylvania Environmental Hearing] Board note[d] that [this] language does not *prohibit* the use of the COA in other matters, but only that such use is done without *authorization*" of either party. **Id.** at 8 (unnumbered). Appellant ostensibly violated this provision by attaching the consent order and agreement to its own pleading, and relying upon the information contained therein in its defense of the Montgomerys' suit. Accordingly, we reject Appellant's attempt simultaneously to rely on and distance itself from the consent order and agreement. Finally, we acknowledge the trial court's statement that it "relied on more than just the COA in reaching its determination." Trial Court

Opinion, 11/4/2015, at 9 (unnumbered). This is borne out by the trial court's June 30, 2015 opinion. For all of the foregoing reasons, we affirm the judgment entered against Appellant.

Judgment affirmed. The parties shall attach the trial court's June 30, 2015 opinion to this memorandum in the event of further proceedings.

Judge Shogan joins.

Judge Olson files a dissenting memorandum.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2017

IN THE COURT OF COMMON PLEAS OF VENANGO COUNTY, PENNSYLVANIA

ARTHUR MONTGOMERY and BARBARA : 
J. MONTGOMERY, Husband and Wife, :
    Plaintiffs, :

v. :     Civ. NO. 392-2014

R. OIL & GAS ENTERPRISES, INC., :
    Defendant. :

FILED
JUN 3 0 2015
COMMON PLEAS COURT
VENANGO CO. PA

### OPINION OF COURT

AND NOW, this __30__ day of June, 2015, the court has before it the Motion for Judgment on the Pleadings filed by the Plaintiff in the above captioned matter. We heard argument on this motion on October 29, 2014. We have considered the arguments made together with the pleadings filed by the *pro se* parties and, after consulting the appropriate authorities, now make the following disposition of the Plaintiffs' Motion for Judgment on the Pleadings.

### *Procedural History*

Plaintiffs, Arthur Montgomery and Barbara J. Montgomery, husband and wife, commenced this lawsuit by filing a two-count Complaint sounding in Declaratory Judgment and Action in Trespass on April 10, 2014. Defendant, R. Oil & Gas Enterprises, filed an Answer and New Matter on May 13, 2014. Plaintiffs filed a Reply to New Matter on June 11, 2014. On or about August 22, 2014, Plaintiffs filed a Motion for Judgment on the Pleadings in this matter. On September 12, 2014, counsel for the Plaintiffs, William J. Cisek, Esquire, filed a Brief in Support of the Motion for Judgment on the Pleadings. On October 20, 2014, counsel for the Defendant, Thomas A. Pendleton, Esquire, filed a Response and Brief in Opposition to Plaintiffs' Motion for Judgment on the Pleadings. Subsequently, this court held argument on Plaintiffs' Motion for Summary Judgment on October 29, 2014.

1

## *Factual Background*

The following factual allegations of this case are taken from Plaintiffs' Complaint, the pleadings, and the parties' respective briefs. This lawsuit arises out of an Oil and Gas Lease in Allegheny Township, Venango County, Pennsylvania. Plaintiffs' Complaint seeks a court determination that an Oil and Gas Lease, dated August 11, 1975, now owned by the Montgomerys, is null, void, and terminated both by the provisions of said Lease and by abandonment. The Lease was entered into by and between Donald A. and Melvena P. Macdonald and Quaker State Oil Refining Corporation, on August 11, 1975, and recorded in the Recorder of Deeds Office of Venango County on September 3, 1975, in Deed Book 771, page 57. The Oil Lease consisted of 240 acres, 132 perches, the premises of which were owned by numerous land owners. The Montgomerys purchased 32.318 acres by Deed dated February 17, 2010, recorded on February 18, 2010, in Deed Book 569, page 47. The parties disagree as to the extent of the Montgomerys' interest in the premises acquired pursuant to the deed.

The subject Macdonald Lease was assigned on multiple occasions. The Defendant purchased said Lease by Assignment of Leasehold Interest dated January 26, 2009, by Assignment of Faith Woideck, as President of Sterart Run Co., Inc., and sole shareholder of Harmony Oil & Gas Company, Inc. This assignment stated the following provision:

> Assignor makes no warranty as to its title of those leasehold interests set forth in Exhibit "A" and further makes no warranties or representations as to the validity of said leases.

See Assignment of Leasehold Interest. Following Plaintiffs' purchase of the property in 2010, Plaintiffs noticed activity on the 32.318 acre premises in early 2014. As a result of observing this activity, Plaintiffs secured legal counsel. Next, Plaintiffs, by letter dated March 12, 2014, demanded that Defendant, R. Oil & Gas Enterprises, Inc., cease activity on the subject property,

2

and further to execute a surrender of the subject Macdonald Lease. The Defendant continued

activities on the premises after receipt of the correspondence. As a result of Defendant's actions,

Plaintiffs filed their action on April 10, 2014.

The Lease contains a primary term of ten (10) years from August 11, 1975, and "**as long**

**thereafter as oil or gas is or can be produced from said land in paying quantities.**" See Oil

& Gas Lease, ¶ 1 (emphasis added). Paragraphs 9 and 10 of the Lease provide that, as long as oil

or gas can be produced from the land governed by the Lease, the Lessee is obligated to pay the

Lessor the sum of $60 every three months. Defendants assert that they attempted to pay Plaintiffs

the amount of $128 on May 13, 2014, for their 32 acre interest, but this amount was rejected.

Specifically, the subject MacDonald Oil & Gas Lease set forth the following provision with

respect to the "primary term" of said Lease:

> WITNESSETH, That the lessor in consideration of the sum of One
> Dollar in hand paid, the receipt whereof is hereby acknowledge,
> and in further consideration of the covenants and agreement
> hereinafter contained on the part of the lessee to be kept and
> performed, hereby leases and grants unto the lessee, its successors
> and assigns, together with the exclusive right to drill wells and
> operate thereon to produce, save and take care of said products, all
> for the term or Ten years from the date hereof and **as long**
> **thereafter as oil and gas is or can be produced from said land**
> **in paying quantities.**

See Oil and Gas Lease (emphasis added). The Lease further expounds on the "primary term" as

follows:

> It is agreed, however, and this lease is made on the condition, that
> it shall become null and void and all rights hereunder shall cease
> and determine, unless work for the drilling of a well is commenced
> on said premises within ninety days from the execution of this
> lease and prosecuted with due and reasonable diligence, or unless
> the lease shall pay to the lessor in advance every three months until
> work for the drilling of a well is commenced, the sum of twenty-
> five cents per acre, that is Sixty Dollars, for each three months
> during which the commencing of such work is delayed.

3

*Id.* Finally, the Habendum clause reads:

> It is mutually agreed that should the first well drilled by the lessee be nonproductive of oil or gas in paying quantities or should all wells drilled and operated by the lessee on said premises become nonproductive and be plugged and abandoned, then this lease in either event shall continue in full force and effect for one year thereafter, and if the lessee, prior to the end of said year, shall either commence to drill a well on said premises and oil or gas is found in paying quantities, or in lieu of commencing such well shall pay the lessor, at the same rate and times in the same manner, the rental above stated until such well is commenced, this lease shall be continued in full force and effect for the remainder of the term above stated and so long thereafter as oil or gas can be produced in paying quantities.

*Id.* In February 2008, Defendant approached the Pennsylvania Department of Environmental Protection ("DEP") to purchase some 385 of the 668 wells included in a Consent Order and Agreement of December 4, 2001, between Harmony Oil & Gas, Inc. and the DEP. Defendant, in March of 2009, entered into a Consent Order and Agreement with the DEP regarding the wells on the subject Lease. Of particular interest to this court, as it relates to the arguments raised by both parties, is paragraph C of the Consent Order, which states:

> On December 4, 2001, Harmony Oil & Gas, Inc. and Faith Woideck entered in a Consent Order and Agreement ("2001 Agreement") with the Department to address violations concerning 668 abandoned wells in Venango and Forest Counties. In this agreement, Harmony Oil & Gas, Inc. and Faith Woideck agreed to plug or produce all of these wells over the next 10 years. **Harmony Oil & Gas has not plugged or produced any wells over the last five years.**

See Consent Order and Agreement (emphasis added). Additionally, paragraph F of the Consent Order and Agreement explicitly states that the subject wells were "**abandoned wells**" because the wells had not been produced for at least twelve (12) months and/or were missing the equipment necessary for production. *Id.* (emphasis added). Prior to the Defendant entering into

4

the March 9, 2009 Consent Order and Agreement with the DEP, Defendant acquired the Harmony Oil & Gas Wells, including the Wells on the subject MacDonald Lease, but purchasing same by Assignment of Leasehold Interest dated January 26, 2009.

## *Analysis*

The relevant standard for rendering judgment on the pleadings is well known. In ruling on a motion for judgment on the pleadings, all of the opposing party's factual allegations must be viewed as true. *Commonwealth of Pennsylvania v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 52 A.3d 498 (Pa. Cmmw. Ct. 2012). The purpose of the motion for judgment on the pleadings is to expedite justice. *Wark & Co v. Twelfth & Sansom Corporation*, 107 A.2d 856 (Pa. 1954). Only those facts that have been specifically admitted by the opposing party may be considered against it. *Buehl v. Beard*, 54 A.3d 412, 415 (Pa. Cmmw. Ct. 2012) (citing *Bergdoll v. Kane*, 694 A.2d 1155, *1157* (Pa. Cmmw. Ct. 1997)). The court may consider only the pleadings themselves and documents properly attached thereto. *Id.* A grant of a motion for judgment on the pleadings requires that there be no genuine dispute on a material fact and that judgment is clear on the law. *Beard*, 54 A.3d 415 (citing *Pennsylvania Association of Life Underwriters v. Foster*, 608 A.2d 1099, 1102 (Pa. Cmmw. Ct. 1992)).

"A lease is in the nature of a contract and is controlled by principles of contract law." *T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012). As such, a lease must be construed in accordance with the terms of the lease agreement as manifestly expressed, and "[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement." *Id.* (quoting *J.K. Willison v. Consol. Coal Co.*, 536 Pa. 49, 637 A.2d 979, 982 (1994)). The party seeking to terminate the lease bears the burden of proof. Furthermore, the Supreme Court has stated:

5

> It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. An interpretation will not be given to one part of a contract which will annul another part of it.

*Neal D. Ivey Co. v. Franklin Associates,* 87 A.2d 236, 239 (Pa. 1952). The "intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." *Glen-Gary Corp. v. Warfel Constr. Co.,* 734 A.2d 926, 929 (Pa. Super. Ct. 1999). When a contract is clear and unequivocal, its meaning must be determined by its contents alone, *Steuart v. McChesney,* 444 A.2d 659, 661 (Pa. 1982).

Whether a contract is ambiguous is a question of law, *Sun Co. Inc. v. Penn Turnpike Commission,* 708 A.2d 875, 878 (Pa. Commw. 1998), and contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. *Kane v. State Farm Fire & Cas. Co.,* 841 A.2d 1038, 1042 (Pa. Super. Ct. 2004). While "unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact." *The Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.,* 905 A.2d 462, 469 (Pa. 2006).

> Within the oil and gas industry, oil and gas leases generally contain several key provisions, including the granting clause, which initially conveys to the lessee the right to drill for and produce oil or gas from the property; the habendum clause, which is used to fix the ultimate duration of the lease; the royalty clause; and the terms of surrender....
>
> * * *
>
> Typically, ... the habendum clause in an oil and gas lease provides that a lease will remain in effect for as long as oil or gas is produced "in paying quantities." Traditionally, use of the term "in paying quantities" in a habendum clause of an oil or gas lease was regarded as for the benefit of the lessee, as a lessee would not want to be obligated to pay rent for premises which have ceased to be productive, or for which the operating expenses exceed the

6

income. More recently, however, and as demonstrated by the instant case, these clauses are relied on by landowners to terminate a lease.

*Phillips,* 42 A.3d at 267-268.

### *Abandonment*

The case of *Penneco Pipeline Corporation, et al., v. Dominion Transmission, Inc.*, 2008 WL 4005111 (C.A.3), recognized the general principle that an oil and gas leasehold interest is subject to the doctrine of abandonment. Specifically, the court stated:

> an oil and gas interest is subject to the doctrine of abandonment. *Aye v. Philadelphia Co.*, 44 A. 555 (Pa. 1899). After recognizing that an implied covenant to develop an oil and gas leasehold with reasonable diligence arises, the Court has held that there is an implied obligation on the lessee to proceed with the exploration and development of the property with reasonable diligence "according to the usual course of business," and failure to do so amounts to an abandonment. *Id.* at 556. The Supreme Court pronounced in *Aye* that an "unexplained cessation of operations...give[s] rise to a fair presumption of abandonment, and, standing alone and admitted, would justify the court in declaring an abandonment as a matter of law." *Id.* In *Clark v. Wright*, the Pennsylvania Supreme Court dealt with a property on which a single natural gas well had been drilled. 166 A. 775. The well was abandoned some years later. After the well was abandoned, the lessee-operator sat idly by and conducted no further operations. The Court upheld a claim of abandonment declaring that: **An oil or gas well from which no oil or gas is produced and marketed within a reasonable length of time is as no well at all to a lessor dependent upon such acts for his compensation.** Under these circumstances, a conclusion of surrender is an equitable one.

*Penneco Pipeline Corporation, et al., v. Dominion Transmission, Inc.*, 2008 WL 4005111 at *36 (C.A.3). In the 1899 Pennsylvania of Supreme Court case of *Aye v. Philadelphia Co.*, 44 A. 555, the Court held:

> Abandonment is a question of fact, to be determined by the acts and intentions of the parties. An unexplained cessation of operations for the period involved in this case gives rise to a fair

7

> presumption of abandonment, and, standing alone and admitted, would justify the court in declaring an abandonment as matter of law...

*Aye,* 44 A. at 556. Proof of abandonment can be established by circumstantial evidence. *Eckel v. Elsworth,* 92 A.2d 174 (Pa. 1952). A record may evidence an abandonment of the subject lease by reason of non-activity for a term of years. *Id.* at 177. The Pennsylvania Supreme Court has explained that the title conveyed in an oil and gas lease is inchoate, and is initially for the purpose of exploration and development. *Phillips,* 42 A.3d at 267 (Pa. 2012). After the primary term has passed, the "thereafter" language becomes the operative provision of the Habendum Clause because upon "oil or gas" being produced, a fee simple determinable is created in the lessee, and the lessee's right to extract oil or gas becomes vested. *Id.* at 267.

Recently, our Superior Court has decided a case seeking a determination as to whether two gas and oil leases terminated due to lack of production and failure to adhere to the express terms of the governing lease. *Heasley v. KSM Energy, Inc., et. al.,* 52 A.3d 341 (Pa. Super. Ct. 2012). Our Supreme Court has long held that "[w]here a lessor's compensation is subject to the volume of production, the period of active production of oil or gas is the measure of the duration of the lease." *Clark v. Wright,* 166 A. 775, 776 (Pa. 1933). By contrast,

> [w]here [a] lessor's compensation is a definite and fixed amount unrelated to the volume of production, the duration of the lease is not measured by the length of time the mineral is actually extracted and marketed; but by the time during which the lease provides that the lessor shall receive the fixed rental. Under these latter circumstances, it can make no difference to lessor whether 100 or 1,000,000 cubic feet of gas is produced.

*Id.* Two leading cases in this State illustrate these rules. In *Cassell v. Crothers,* 44 A. 446 (Pa. 1899), the clause under consideration reads: "as long thereafter as oil or gas is found in the land described in paying quantities." The remuneration which the lessor was to obtain for the use of

8

his land was on a royalty basis and not on a flat rental basis. The Supreme Court held that in an oil lease for a fixed period and "as long thereafter as oil is found in paying quantities," where the lessor's compensation is one-eighth of the oil produced, the tenancy as to the surface of the land, after the expiration of the fixed period, and after the fact that oil is not being found and produced in paying quantities becomes susceptible of proof, is a tenancy in the nature of a tenancy at will, and if not actually terminated by mutual consent, or continued by mutual consent in order that further exploration be made, may be terminated by either party. *Cassell, supra.*

The other case, and typical of the second rule as to compensation, is that of *Summerville v. Apollo Gas Co.,* 56 A. 876 (1904), wherein, under the terms of the lease, the lessee had the right to hold the premises "for and during the term of two years ... and as much longer as oil and gas are found in paying quantities, or the hereinafter described rental is paid." The lessee failed to market any gas during the extended period, but retained it in the well, although the evidence indicated the well would produce one million feet per day. The lower court instructed the jury to bring in a verdict for the defendant on the ground that gas was found in paying quantities. The Pennsylvania Supreme court affirmed the judgment, and in its opinion stated that it may be that for some time the lessee was not able to find a purchaser for the gas, "but that was not the affair of the lessors; that they are not interested in the proceeds of the sale of the gas. Their rights under the agreement extended only to the receipt of a stipulated annual rental for each well." *Phillips,* 227 A.2d at 165 (quoting *Clark v. Wright,* 311 Pa. 69, 166 A. 775, 776 (1933)).

In *Heasley,* the Court found that a tenancy at will existed between the parties because the terms of the lease were similar to those terms in *Cassell,* and the Lease Agreement remained in effect only so long as production continued. When production ceased, the lease became an at-

9

will tenancy, subject to termination by the lessor at any time. *Heasley,* 52 A.3d at 347. In the instant case, the Lease Agreement at issue provided the following relevant terms:

> WITNESSETH, That the lessor in consideration of the sum of One Dollar in hand paid, the receipt whereof is hereby acknowledge, and in further consideration of the covenants and agreement hereinafter contained on the part of the lessee to be kept and performed, hereby leases and grants unto the lessee, its successors and assigns, together with the exclusive right to drill wells and operate thereon to produce, save and take care of said products, all for the term or **Ten years from the date hereof and as long thereafter as oil and gas is or can be produced from said land in paying quantities.**
> \*\*\*
>
> First: To deliver to the credit of the lessor, as royalty, free of cost, in the pipeline to which the wells of the lessee may be connected, the equal ONE-EIGHTH part of all oil produced and saved from the leased premises; and
>
> Second: To pay quarterly to the lessor, as royalty one-eighth of the net proceeds received for the gas from each and every gas well drilled on said premises, the production from which is marketed off the premises, while the gas from said well is so marketed.
> \*\*\*
>
> It is agreed, however, and this lease is made on the condition, that it shall become null and void and all rights hereunder shall cease and determine, unless work for the drilling of a well is commenced on said premises within ninety days from the execution of this lease and prosecuted with due and reasonable diligence, or unless the lessee shall pay to the lessor in advance every three months until work for the drilling of a well is commenced, the sum of **twenty-five cents per acre, that is, Sixty Dollars, for each three months during which the commencing of such work is delayed.**
>
> It is mutually agreed that **should the first well drilled by the lessee be nonproductive of oil or gas in paying quantities or should all wells drilled and operated by the lessee on said premises become nonproductive and be plugged and abandoned, then this lease in either event shall continue in full force and effect for one year thereafter, and if the lessee, prior to the end of said year, shall either commence to drill a well on said premises and oil or gas is found in paying quantities, or in lieu of commencing such well shall pay the lessor, at the same rate and times in the same manner, the rental above stated until such well is commenced, this lease shall be continued in full force and effect**

10

> for the remainder of the term above stated and so long thereafter
> as oil or gas can be produced in paying quantities.

See Oil and Gas Lease (emphasis added). Upon review, we conclude that the provisions of the Lease Agreement do not restrict its duration based upon volume of production. The Lease subject to this litigation is similar to that in *Cassell*, in that it is based upon production. The Lease was to last for a term of ten years and "as long thereafter as oil or gas is or can be produced". After the expiration of the fixed period of ten years, and after oil is not found and produced in paying quantities, the tenancy became a tenancy at will.

In *Phillips*, the lease agreement provided, in relevant part, as follows:

> Should any well not produce oil, but produce gas in paying quantities, and the gas therefrom be sold off the said premises, the consideration to the said first party (*i.e.,*lessors) for the gas from each well from which gas is marketed shall be as follows:
>
> At the rate of $ 200 per year while the well shows a pressure of 200 or more lbs., per square inch, upon being shut in 5 minutes in 2 inch pipe or 30 minutes in larger pipe; at the rate of $ 100 per year, while the well shows a pressure of 100 or more lbs., per square inch, and less than 200 lbs., per square inch upon being shut in 5 minutes in 2 inch pipe, or 30 minutes in larger pipe; at the rate of $ 50 per year while the well shows a pressure of less than 100 lbs., per square inch, upon being shut in 5 minutes in 2 inch pipe or 30 minutes in larger pipe; **to be paid quarterly from completion to abandonment of well.**
>
> While gas is being sold off these premises, providing the gas pressure is high enough, first party, *i.e.* (lessors) may have gas free of costs for domestic purposes in one dwelling on said premises to the extent of 200,000 cubic feet per year, first party (*i.e.,*lessors) to make the necessary connections and to assume all risk in using said gas.

*Phillips*, 227 A.2d at 163-64 (emphasis added). The provisions of the *Phillips* lease agreement required the lessor to be paid quarterly, regardless of production. *Id.* The lease agreement, by its terms, anticipated rentals to be paid, regardless of production, from the completion of the well

11

until its abandonment. *Id.* Our Supreme Court accordingly held that the lease, "by its terms providing for remuneration to lessors[,] is unrelated to production of gas and requires payment of a fixed rental based upon gas pressure." *Id.* at 165. Accordingly, the Supreme Court upheld a decree enjoining the landowners from interfering with the lessee's use of its wells. *Id.*

By contrast, the Lease Agreement in the instant case set the duration of the lease for ten years, and "as long thereafter as oil or gas is or can be produced from said land in paying quantities." See Oil and Gas Lease. As we stated above, by this language, the Lease is similar to the production agreement described in *Caswell*. The Lease, by its terms, remained in effect only so long as production continued, and when production ceased, the lease became an at-will tenancy, subject to termination by the lessor at any time. *See Phillips,* 227 A.2d at 165 (recognizing that when production cease, the lease lapsed into a tenancy at-will).

We are left with the conclusion that the subject MacDonald Oil and Gas Lease was abandoned by the prior owner Harmony Oil and Gas Company, Inc. That wells on that property have not been produced at any time after the year 2001. The aforementioned case law makes clear that neither oil nor gas was produced from the MacDonald Oil and Gas Lease in paying quantities, and that Harmony Oil & Gas had breached its implied obligation to explore and develop the property "with reasonable diligence." The failure to do so amounted in an abandonment of the Lease.

Defendant also claims that it has saved the Lease by tendering a check to the Plaintiffs in the amount of $128.00, an amount which Plaintiffs would be due from the inception of the Lease Assignment through March 12, 2014. However, this Lease was already abandoned by Harmony Oil & Gas prior to its assignment to the Defendant. Additionally, we see no evidence in the pleadings whatsoever that Defendant attempted payment of a shut in or deferred royalty to

12

Plaintiffs' predecessor in title, although Defendant does have the burden of proving this payment. Instead, Defendant did not allege in its Answer and/or New Matter that it paid or attempted to pay such an amount to *any* of the property owners of the original 240 acre MacDonald Lease.

Regardless, even if Defendant successfully paid Plaintiffs' a rental payment of twenty-five cents per acre, as detailed in the Habendum Clause in the Lease, the Lease would have been extended only "for the remainder of the term above stated", which was for a period of ten years only. The primary term of ten years expired well before the alleged proffer of payment in 2014.

### *Expiration of the Lease Term*

The Habendum Clause provided that the Lease shall continue in full force and effect so long as oil or gas can be produced in paying quantities. Further, if wells on the subject leased premises became non-productive, then the Lessee may pay a "rental" to the Lessor, as calculated in a previous clause of the Lease, until such well is commenced. In the instant case, this rental amounts to twenty-five cents per acre.

The subject Lease was originally entered into in 1975. Obviously, the ten year primary term has long elapsed. Additionally, production of the wells on the subject Lease ceased long before this action was commenced. An "abandoned well" is defined as one that has not been used to produce, extract, or inject any gas, petroleum, or other liquid within the preceding 12 months, or any well for which the equipment necessary for production, extraction, or injection has been removed, or any well, considered dry, not equipped for production within 60 days after drilling, redrilling, or deepening. 58 Pa.C.S.A. § 3203. The Consent Order and Agreement dated March 9, 2009, between the Department of Environmental Protection and the Defendant, R. Oil & Gas Enterprises, Inc., evidences that the wells were "abandoned wells", and that "Harmony Oil and

13

Gas has not plugged or produced any wells over the last **five years.**" See Consent Order and Agreement (emphasis added). R. Oil & Gas argues that the Plaintiffs failed to allege any facts that support the contention that Harmony did not *attempt* to plug and produce wells in compliance with the Consent Order." See Brief in Opposition to Motion for Judgment on Pleadings, p.4. The Lease's primary term lasted for ten (10) years from August 11, 1975, and "as long thereafter as oil or gas is or can be produced from said land in paying quantities." It was *not* stated that the wells would be retained so long as Defendants "attempted" to produce oil in paying quantities.

Considering the averments set forth by Defendants in its Answer and New Matter, as well as omissions of averments, we find the Defendant failed to produce any wells on the MacDonald Lease and made no attempt to make shut in or deferred rental payments to any of the property owners involves in the Lease. The MacDonald Lease terminated upon its own, unambiguous terms and provisions, as well as having been long-abandoned by Harmony Oil and Gas prior to the Assignment of said Lease to the Defendant.

The ultimate failure to produce oil or gas, as well as the failure to comply with the other requirements of the Lease, compels this Court to hold that the MacDonald Lease was terminated and title reverted to the property owner, who, at this time, are the Plaintiffs, Arthur and Barbara J. Montgomery. Production lapsed sometime prior to the year 2001, and the Lease was confirmed abandoned by the Department of Environmental Protection's Findings and Order. The Court finds that The Oil and Gas Lease between Donald A. and Melvena P. MacDonald and Quaker State Oil Refining Corporation is null, void, and of no force and effect pertaining to Plaintiffs' premises of 32.318 acres situated in Allegheny Township, Venango County, Pennsylvania.

14

## Conclusion

Therefore, in light of the foregoing analysis, we find that the pleadings themselves and documents properly attached thereto reveal there to be no genuine dispute on a material fact and that judgment is clear on the law. *Beard*, 54 A.3d at 415. Plaintiffs have met the relevant standard to succeed on their Motion for Judgment on the Pleadings. Accordingly, we will grant the Plaintiffs' Motion for Judgment on the Pleadings.

BY THE COURT,

ROBERT L. BOYER, Judge

cc:　C. Proper
Prothonotary (B. Knupp)
E. Rottinger

15